W. C. Goffe, Receiver of Dilts & Morgan, Inc., v. National Surety Company, Appellant.—9 S. W. (2d) 929.

Division Two, October 6, 1928.

*Sebree, Jost & Sebree* and *M. M. Bogie* for appellant.

144

*McCune, Caldwell & Downing* for respondent.

146

BLAIR, J.—Action on a fidelity bond. Trial before a jury in the Circuit Court of Jackson County resulted in a verdict for plaintiff in the sum of $11,075 for loss under the bond and an allowance of attorneys' fees in the sum of $3000 for vexatious refusal to pay. Plaintiff remitted the allowance for attorneys' fees, and judgment

was entered for him in the sum of $11,075, from which defendant was granted an appeal to this court.

The bond was issued to Dilts & Morgan, Inc., a corporation engaged in the grain brokerage business in Kansas City and elsewhere. It handled actual purchases and sales of grain and also transactions for future delivery. It maintained a branch office at Wichita, Kansas, which was in charge of Paul Mathews. Defendant insured to Dilts & Morgan the fidelity of Mathews and a number of other employees. The bond was written June 21, 1921, and expired June 21, 1922. For some unexplained reason, the coverage of said bond did not include Mathews when the bond was first written. His name was not added to the schedule of the bond until May 3, 1922, when the bond had only seven weeks to run.

On January 13, 1923, plaintiff Goffe was appointed receiver of Dilts & Morgan, Inc. On January 26, 1923, plaintiff advised defendant by telegraph at its New York office that Mathews had become short in his accounts with Dilts & Morgan approximately $20,000 during the period covered by the bond. On the same day a letter dictated by plaintiff's counsel, Judge Henry L. McCune, and signed by plaintiff in his capacity as receiver, was mailed to defendant at its New York office. In this letter plaintiff advised defendant of his appointment as receiver of Dilts & Morgan and that Mathews had misappropriated approximately $20,000 of the funds of said company. No specific items were set forth in the letter, but the defalcations were stated to have occurred between May 5, 1922, and June 21, 1922. It was stated that the books of Dilts & Morgan were being audited and that plaintiff would give defendant accurate information as soon as he could secure same. On February 1, 1923, defendant acknowledged receipt of plaintiff's telegram and advised him that the matter was being referred to defendant's St. Louis claim department in charge of C. J. Johnson and suggested that plaintiff get in touch with Mr. Johnson.

On February 13, 1923, plaintiff wrote to Johnson specifying four items of alleged defalcations of Mathews which had come to his knowledge at that time. Plaintiff then stated that he would be glad to render all possible assistance to defendant and advised that the vouchers and books of Dilts & Morgan were available to defendant for examination at any time. On the following day plaintiff wrote to defendant advising it that Mathews had admitted that the items mentioned in the letter of the previous day were used for his own benefit and also that Mathews had admitted the misappropriation of an item of $2000 of the money of Dilts & Morgan in addition to those specified in the letter of the previous day.

Other correspondence followed and an investigation was undertaken by defendant. In a letter written to defendant for plaintiff by Judge McCune, under date of March 9, 1923, formal claim for $10,000 was made on account of embezzlements and misappropriation of the funds of Dilts & Morgan by Mathews. As the loss was said to exceed $10,000, the limit of liability named in the bond, only four items, totaling $11,000, were specified, with the express reservation in plaintiff to present such further claims under the bond as subsequent investigation might warrant. On March 16, 1923, defendant advised plaintiff from its New York office that "the matter is receiving consideration and attention."

On April 3, 1923, defendant wrote to plaintiff from its New York office disclaiming liability on the bond in suit for any alleged defalcations of Mathews on the ground that the claims did not come within the terms of the bond and stated that: "It is our information that Dilts and Morgan knew of a shortage in the accounts of Mathews in October, 1920, of $7200, upon which Mathews had paid directly to Dilts and Morgan some $1100 between October, 1920, and the date upon which our bond became effective. Dilts and Morgan, on the 2d day of May, 1922, over the signature of its president, William G. Dilts, Jr., warranted to us that on the 30th day of April, 1922, Mathews' accounts were audited and found correct in every particular, and that there had never come to the notice or knowledge of Dilts and Morgan any act, fact or information tending to indicate that Mathews was negligent, unreliable, deceitful, dishonest or unworthy of confidence. Having this in mind, in reading the first condition precedent to the bond, you will note that that instrument became null and void and of no effect from the beginning. We are returning the enclosure without our check, for the reasons indicated and without in any manner waiving any of our other rights or defenses now known or which may hereafter develop."

Referring to the bond, we find in the first condition precedent to recovery thereunder, the following:

"1st: That the Employer shall not have had at the date hereof, any knowledge of any employee, set forth in said schedule, or at the date of the adding of any new employee, having been guilty of any act of Personal Dishonesty, in any position in the Employer's service or in the service of any other person, firm or corporation, and all statements which the Employer has furnished the Surety concerning any employee, or his duties or accounts, are warranted by the Employer to be true and if any of the statements be false or untrue, this obligation shall be null and void, and of no effect from the beginning."

Before the schedule of the bond was amended so as to include Mathews, he was required to make a statement and to answer certain questions over his signature. To such statement there was appended the following statement by Mathews' employer, to-wit:

"The foregoing employee has been in the service of the undersigned Employer two and a half years and —— months and the duties required have always been performed in a faithful and satisfactory manner. The accounts were last audited on the 30th day of April, 1922, and were correct in every particular. There has never come to the notice or knowledge of the Employer any act, fact or information tending to indicate that Employee is negligent, unreliable, deceitful, dishonest or unworthy of confidence. As far as the Employer knows, Employee's habits are good.

"Dated at Kansas City, Mo. the 2nd day of May, 1922.

"DILTS & MORGAN
(Employer)
"By (Signed) WM. G. DILTS, JR. (Pres.)"

Defendant made no tender of premiums paid to it when it sent to plaintiff its letter of April 3, 1923, disclaiming liability on the bond. On January 6, 1925, which was a few days before the case was set for trial, defendant tendered to plaintiff not only the premium charged for including Mathews in the bond, but the entire premium paid on the bond. No question is raised as to the sufficiency of the tender, if it was otherwise availing. The court instructed the jury as follows:

"The court instructs the jury that in so far as defendant bases its defense upon any declaration or statement made in the so-called 'Employer's Declaration' dated May 2, 1922, made by Dilts & Morgan, Inc., concerning Paul J. Mathews, nothing contained in said declaration constitutes any defense to plaintiff's claim under the policy sued on, and said declaration and every statement made therein and all evidence concerning the same are withdrawn from your consideration in arriving at your verdict upon the issue as to whether or not plaintiff is entitled to recover for loss, if any, under said policy."

On the foregoing statement of facts, and before entering into any further statement of the facts on the merits of the case, a preliminary question is presented for consideration. We take it first because a conclusion in favor of defendant's contention might end the case in this court without further consideration of other questions.

The evidence discloses that Mathews had previously misappropriated the funds of Dilts & Morgan and, in the fall of 1920, had admitted such misappropriation in the sum of several thousand dollars. He had been retained in the employ of said company after such dis-

150

covery notwithstanding that fact. He was paying back his shortage and had paid Dilts & Morgan about $1100 at the time that company signed the declaration that his accounts were audited April 30, 1922, and were found to be correct and that there had never come to its notice or knowledge any facts or information indicating that Mathews was negligent, dishonest, etc. Defendant contends that, in making such statement with knowledge of Mathews' previous defalcation, Dilts & Morgan breached the warranty contained in the bond and the bond thereby "became null and void and of no effect from the beginning."

To meet this contention plaintiff contends that said statement or declaration did not amount to a warranty, the breach of which would avoid the bond, and, even if it did constitute such warranty, defendant cannot avail itself of such defense because Mathews had advised defendant in answers made by him and contained in his application that he had misappropriated and speculated in grain with the funds of a prior employer and had been discharged on account of such misappropriation of funds and was still in debt to such former employer on that account at the time he made the statement to defendant.

Plaintiff also contends that, even assuming that the statement of Dilts & Morgan constituted a warranty and that defendant had the right to rely on it and that such warranty, if false, had the effect of avoiding the bond from the beginning, yet defendant cannot avail itself of such defense in this case because it was its duty to tender to plaintiff the premium paid to it for the bond as soon as it discovered the alleged breach of warranty and that, by its failure to make such tender for nearly two years, defendant waived the right to make such defense.

If plaintiff is correct in his contention last stated, it will be unnecessary to consider defendant's contention of breach of warranty or plaintiff's contention that the statement did not constitute a warranty or, if so, that defendant had no right to rely thereon. We will therefore first consider the question of waiver urged by plaintiff.

The rule appears to be established in this State that, if an insurance company or bonding company desires to place itself in a position to make the defense that the policy or bond was not in force and effect from the beginning, it is its duty to tender back to assured the premiums paid by him within a reasonable time after the discovery of the facts upon which it intends to base such defense. The question of what constitutes a reasonable time is usually for the jury. But where, as here, no excuse whatever is offered for such failure to tender back the premium paid and nearly two years have elapsed between the time of the disclaimer by the insurer and the

time of such tender, it is the duty of the court to declare as a matter of law that the time taken to make such tender was not a reasonable time and that such defense is no longer available to defendant for that reason. We cite, with our approval on this point, a number of cases relied on by plaintiff in support of the foregoing rule: Avery v. Mechanics Insurance Co. (Mo. App.), 295 S. W. 509, l. c. 513; Hayden v. American Central Insurance Co. (Mo. App.), 221 S. W. 437, l. c. 441; Bennett v. Standard Accident Insurance Co. (Mo. App.), 264 S. W. 27, l. c. 31; Carroll v. Union Marine Insurance Co. (Mo. App.), 249 S. W. 691, l. c. 692; Malo v. Niagara Fire Insurance Co. (Mo. App.), 282 S. W. 78.

Defendant cites Schwab v. American Yeoman, 305 Mo. 148, 264 S. W. 690; Doerr v. National Fire Insurance Co. (Mo. Sup.), 285 S. W. 961, and Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 75 S. W. 1102, upon the proposition that its failure to tender return of the premium for nearly two years after its discovery of plaintiff's breach of warranty did not waive the defense based on such breach, and also cites Bushong v. Insurance Co. (Mo. App.), 253 S. W. 175; Adams v. Held, 55 Mo. 468, and Thompson v. St. Charles County, 227 Mo. 220, 126 S. W. 1044, on the timeliness of the tender made in this case.

The facts in the cases cited by defendant are quite different from those in the case at bar, as well as quite different from the facts in the cases cited by plaintiff, which tend to support the action of the trial court in withdrawing from the jury the defense of breach of warranty in the case at bar. Such cases can be readily distinguished for that reason. Nothing ruled therein can be regarded as casting doubt upon the propriety of the action of the trial court in withdrawing from the jury in this case the defense based upon the alleged breach of warranty by plaintiff.

This conclusion renders it unnecessary to consider whether or not the declaration of Dilts & Morgan constituted a breach of warranty or whether defendant can take advantage thereof, because it had information concerning the character sustained by Mathews before it executed the bond and accepted the premium from Dilts & Morgan.

This brings us then to defendant's contention that no case was made for the jury upon any of the six items of alleged defalcations of Mathews submitted to the jury by the trial court. Defendant presented its demurrer to the evidence as to each of said items and we will consider the proof on such items separately. We can dispose of the suggestion that the declarations did not occur within the period of time when the bond insured the fidelity of Mathews by saying that the dates the checks and record entries relied on by plaintiff as evidence of such defalcations tend to show that such defalcations occurred within such period, and thus make a case for the jury, in so far as the time

152

of occurrence of such defalcations is concerned, notwithstanding Mathews' testimony in his deposition tending to show that whatever defalcations he committed were prior to the time covered by the bond.

Plaintiff offered evidence tending to prove the issuance and payment out of the funds of Dilts & Morgan of six items, the proceeds of which he contends were embezzled by Mathews, as follows: (1) The proceeds of a check of May 8, 1922, payable to A. C. Houston for $2000; (2) the proceeds of a check of June 6, 1922, for $5000, drawn upon and payable to First National Bank of Wichita, Kansas, and charged in the check register and daily report as having been paid to Fred Stebbins; (3) proceeds of a check of June 19, 1922, for $1000, drawn by Olive Shore upon and payable to First National Bank of Wichita. The check was charged to Fred Stebbins. (4) proceeds of an item of May 8, 1922, representing the withdrawal of $2000. The check used was not produced at the trial, but it appears to have been drawn upon Dilts & Morgan's account and charged to H. F. Probst; (5) the proceeds of an item of May 23, 1922, in the sum of $500. This check was not produced in evidence. It appears to have been drawn on Dilts & Morgan's account in the First National Bank of Wichita and charged to A. C. Houston; (6) the proceeds of an item of June 2, 1922, for $228.96. A check appears to have been drawn, but same was not produced at the trial. This check appears to have been drawn on Dilts & Morgan's account in First National Bank of Wichita and charged to G. E. Lamb.

THE $2000 HOUSTON ITEM.—Houston's deposition was taken in Wichita and he testified that he received and cashed a check for $2000, and identified his signature on the back of the check. He said this was in payment of an account due him from Dilts & Morgan. The check was signed by Matthews. He had falsified the records by causing the check to be entered on the check register as drawn in favor of one John McCready, a customer of Dilts & Morgan at the time. It was not shown that McCready ever protested this charge against his account, but the proof shows that he did not get the money. There was no showing that Mathews ever obtained any of the proceeds of this check. Houston seemed to have a very hazy recollection about the state of his account with Dilts & Morgan. The records furnished to that firm by Mathews failed to disclose such an indebtedness to Houston. Morgan, one of the officers of Dilts & Morgan, apparently testifying from an examination of the records, said that the firm did not owe Houston $2000. It appears that Houston and Mathews were quite friendly and visited in each other's home occasionally,

We think that the jury was authorized to find that Mathews, by means of this check, withdrew $2000 of Dilts & Morgan's funds and turned the same over to Houston and concealed that fact by charging the check to McCready and that Houston had no valid claim against Dilts & Morgan for the $2000. The friendly relations between Houston and Mathews and the hazy recollection of Houston concerning the transaction are circumstances which the jury had a right to take into consideration in making such finding. It was unnecessary for plaintiff to prove that Mathews participated in the proceeds of the check or profited personally in order to make him guilty of embezzlement. [State v. Meininger, 306 Mo. 675, l. c. 685, 268 S. W. 71, l. c. 74.]

We think the foregoing facts and circumstances were sufficient to sustain the finding of the jury that Mathews embezzled the $2000 Houston item. This is not a criminal prosecution. Plaintiff only had the burden of showing embezzlement by the preponderance of the evidence. He was not required to prove such fact beyond a reasonable doubt, as in a criminal case. The jury was authorized to find that Houston was not entitled to the money on the theory that a valid debt was due him from Dilts & Morgan. It was authorized to find that Mathews wrongfully turned over to Houston his employer's money. The false charge made against McCready's account would not protect Dilts & Morgan against loss. If Houston got the money, the charge to McCready was purely fictitious and would ultimately have to be canceled.

Nor do we think the jury had to consider the proof in the case that Mathews had made a confession of this and other defalcations in order to reach such conclusion. This confession was admitted by the trial court solely upon the issue of vexatious delay and not as any proof of the truth of the facts stated therein. The court instructed the jury thus to limit its consideration of such alleged confession. In the absence of any showing to the contrary, it will be presumed that the jury gave due heed to this instruction.

THE $5000 STEBBINS ITEM.—On June 6, 1922, Mathews drew a check on Dilts & Morgan's account in the First National Bank of Wichita, Kansas, for $5000, payable to said bank. The check was cashed the same day by the bank without being indorsed by anyone. Mathews wrote on the corner of the check the words "Stebbins Stox." This check was entered on the check register as a charge against Fred Stebbins. Olive Shore, an employee in the Wichita office, testified that the entry in the check register was in the handwriting of one Earny Reed. The daily report showed the check was charged to Stebbins. It appears that the check register and the daily reports were made up under Mathews' direction. Stebbins was called

as a witness and testified that he did not get the $5000 thus charged to him.

The jury was authorized to find from the foregoing facts and circumstances that Mathews himself got the money on the so-called $5000 Stebbins check. The money was withdrawn from Dilts & Morgan's account by means of the check drawn by Mathews. From all these circumstances and from the fact that Mathews had the records falsely show that Stebbins got the check, we think a prima-facie case was made that Mathews himself got the money.

There was testimony tending to show that the check may have been used to take up a draft or other collection against Dilts & Morgan. But we regard the truth of such testimony to have been for the jury. It apparently did not believe such testimony. It was instructed that it could not find for plaintiff upon this particular item if it believed the proceeds of such check were used for the benefit of Dilts & Morgan.

THE $1000 STEBBINS ITEM.—On June 19, 1922, Olive Shore, who worked under Mathews' direction, drew a check on Dilts & Morgan's account in the First National Bank of Wichita, payable to that bank for $1000. It was cashed at the bank without indorsement. The name "Fred Stebbins" was written on one corner of the check to indicate to whom it was to be charged. Miss Shore did not remember the disposition she made of the check after she wrote it. She did not cash it. It was her custom to lay checks she drew on Mathews' desk or on her own desk for him. The check was charged to Stebbins. He testified that he did not get the money. On the same day this check was cashed. A deposit for $1000 was entered in Mathews' personal account at the bank. A deposit slip representing the deposit was produced. It was in the handwriting of Mathews.

We think the jury was authorized, from the proof of the foregoing facts, to find that Mathews personally got this item of $1000 and deposited it in his own account, thereby wrongfully appropriating the money to his own use and causing a loss to Dilts & Morgan, within the terms of the bond.

THE $2000 PROBST ITEM.—On May 8, 1922, the daily report sent to the main office of Dilts & Morgan at Kansas City, under Mathews' direction, showed a charge against H. F. Probst of $2000. The check register for that day showed that a check in that amount was drawn on Dilts & Morgan's account in the bank at Wichita, payable to H. F. Probst. The check had been misplaced at the time of the trial. In his letter to defendant under date of February 13, 1923, plaintiff had described the canceled check, then said to be in his possession, as payable to the First National Bank of Wichita and

that it bore no indorsement. It appears that all checks and vouchers were afterwards examined by defendant's agents. If the letter did not correctly describe the check or there was no such check in existense, it is fair to conclude that defendant would have so shown. It was not shown who drew the check or who entered the charge on the records, which were kept under Mathews' supervision and direction.

On the same day the record covering the issuance of said check purports to have been made, Mathews deposited $2000 in his personal bank account. The deposit slip was in his handwriting. Probst testified that he had no dealings with Dilts & Morgan after May 1, 1922. John Probst, his son, who was handling his father's affairs at that time, including the management of the Probst account with Dilts & Morgan, testified that he had no recollection of the receipt of any check in that or any similar amount from Dilts & Morgan and that no such item appeared as a deposit in any of his bank accounts at or about that time.

The books of Dilts & Morgan showed that concern was indebted to H. F. Probst in the sum of $1800 on May 8, 1922, when the record of the issuance of the check was made. On May 16, 1922, a draft for $6700 was sent to Probst to square the Dilts & Morgan account as of that date. Neither Probst nor his son remembered the $2000 check as any part of such settlement.

Whether Mathews appropriated to his own use this $2000 item of Dilts & Morgan's money and thereby embezzled the same and created a loss to Dilts & Morgan, within the terms of the bond, was clearly a question for the jury's determination.

THE $500 HOUSTON ITEM.—No check was produced at the trial covering this item. The daily report showed that Houston was charged with $500 on May 23, 1922, and the check register showed the issuance of a check in that amount drawn on Dilts & Morgan's account, payable to A. C. Houston. It was not shown who drew the check or who made the entries in the records, except the showing that entries of that character were made under the general direction of Mathews. The bank records showed only one check for $500, or any amount similar to that, against Dilts & Morgan's account drawn on or about May 23rd. That check was dated May 22nd, the day before the entry above mentioned. It was a $500 check drawn on the Dilts & Morgan account. On that day (May 22nd) Mathews deposited $500 in his personal account, evidenced by deposit slip in his own handwriting.

Houston did not remember receiving any check for $500. The Dilts & Morgan books showed that Houston had been credited with a $500 payment on May 10, 1922. Houston did not remember making any such payment to Dilts & Morgan. The inference is a

fair one that, if Mathews embezzled the $500 item, he was capable of falsifying the account of Houston so as to show both debits and credits thereon.

Plaintiff made a case for the jury on this item, notwithstanding the difference in the dates. Such difference might well be accounted for as an unintentional mistake or as designedly made that way by Mathews.

THE $228.96 LAMB ITEM.—This is the last of the six items making up the aggregate of plaintiff's judgment for the face of the bond. The check was not in evidence at the trial. The check register and daily report made under the supervision of Mathews showed that a check for $228.96 was drawn on the Dilts & Morgan account on June 2, 1922, and charged to the account of G. E. Lamb. The books of Dilts & Morgan showed it to be indebted to Lamb in that sum on that date. Lamb did not appear as a witness in the case. On that same day and by a deposit slip written in his own handwriting, Mathews deposited the identical amount in his personal account. No other check for a similar amount was cashed by the bank at any time near that date.

The jury was clearly authorized to find from these facts and circumstances that Mathews cashed the check for $228.96 and appropriated its proceeds to his own use by depositing the money in his own personal account and that the record showing Dilts & Morgan to be indebted to Lamb in that sum was fictitious and that the entry in the check register and daily report falsely stated the name of the recipient of the proceeds of the check. The jury had the right so to find, notwithstanding the absence from the record of any direct testimony tending to show that Lamb did not get the money.

We are satisfied there was substantial evidence tending to prove that Mathews obtained the money from the bank account of Dilts & Morgan covering each of the six items considered above and either wrongfully and fraudulently appropriated the same to his own use or permitted another to do so. The jury wast authorized to find that Mathews caused a loss to Dilts & Morgan by means of such acts and that such acts were embezzlements within the meaning of the bond.

Defendant argues that Mathews may have been guilty of forgery or larceny or some crime other than embezzlement in connection with his misappropriation of some of the items considered. It insists that the proof does not show that Mathews was guilty of embezzlement, the ground upon which plaintiff sought to predicate defendant's liability on the bond. The petition charged that Mathews did "steal, take and embezzle certain moneys" of Dilts & Morgan. By the terms of the bond, defendant agreed to make good any loss to Dilts & Morgan "by reason of any act of larceny or embezzlement" on the

part of Mathews or other employees named in the schedule of the bond. The instructions given by the court submitted the case to the jury upon the theory of embezzlement.

The funds of Dilts & Morgan, deposited in the First National Bank of Wichita and subject at all times to the right of Mathews to withdraw same by check, were just as much in Mathews' custody as currency paid to him over the counter before it was deposited by him in the bank. He had full control of the bank account and it is the merest quibbling to argue that he did not have lawful possession of the money of Dilts & Morgan deposited in the bank and hence that there could be no embezzlement when he drew the money from the bank by means of checks and wrongfully converted it to his own use. Checks drawn on the bank payable to said bank or persons other than Mathews were not so drawn in order to enable him to get possession of the money of Dilts & Morgan. He already had possession of it constructively. They were so drawn for the obvious purpose of covering the transactions and concealing where the money really went. Mathews had the right to draw out the money of Dilts & Morgan for purposes of the company. He had no right to draw out funds from the bank or take funds of Dilts & Morgan otherwise in his possession and then fraudulently and wrongfully convert such funds to his own use. When he did either, he was guilty of embezzlement.

By Instruction 3, the trial court submitted to the jury the issue of vexatious refusal to pay and the jury assessed plaintiff's damages for attorneys' fees at $3000. The court compelled a *remittitur* as to the item of attorneys' fees and entered judgment upon the remainder of the allowance in the verdict. Defendant complains that "the admission of evidence on the issue of vexatious refusal to pay prejudiced the jury against the defendant on the merits in the case, and the verdict was based on bias and prejudice."

Defendant objects to being overturned by what it terms a "side wind." True a large amount of evidence was offered upon the issue of vexatious refusal to pay. Much of such testimony could not properly have been admitted, if offered upon the merits of the issue of defendant's liability on the bond. Among other things offered in evidence was the so-called confession of Mathews, in which he admitted part of the defalcations plaintiff sought to prove, and also a letter from plaintiff to defendant advising defendant that he had secured such confession.

The question of whether or not the case was properly submitted to the jury on the issue of vexatious refusal to pay was taken out of the case by the trial court's action in compelling a *remittitur* of the allowance made on that account. Plaintiff had the right to attempt to

prove vexatious refusal to pay. Evidence such as Mathews' alleged confession, when shown to have been brought to defendant's knowledge before its refusal to pay, was clearly admissible on such issue. The trial court was careful to limit consideration by the jury of such proof to that issue only. In the absence of any showing to the contrary, we cannot find that the jury failed to observe this admonition or that it considered such proof for any purpose, except upon the issue of vexatious refusal to pay.

We cannot hold that, because the trial court finally concluded that the allowance by the jury of attorneys' fees was improper and then compelled a *remittitur*, such order related back to the admission of proof offered in support of such issue and made prejudicially erroneous the admission of testimony which was properly admitted under the issues made by the petition at the time it was admitted. Defendant has cited no authority for its contention that the judgment should now be reversed on account of the admission of such evidence. In Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 210 S. W. 37, the leading case in this State on the question of allowance of damages for vexatious refusal to pay a loss under an insurance policy, this court held that an allowance of attorneys' fees on that account was improper and yet permitted respondent to save the remainder on its judgment by entering a voluntary *remittitur* as to such item. Numerous other cases of that kind could be cited.

It would seem that it would entirely destroy the benefits of our statute authorizing assessment of damages and attorneys' fees for vexatious refusal on the part of insurance companies to pay their losses, to hold that claimants upon such policies, in offering testimony admissible solely upon that issue, did so at their own risk and imminently periling their judgments on the merits, if it afterwards turned out, by some subsequent ruling of the court, that the evidence offered was insufficient to establish such vexatious refusal to pay. Defendant's contention is overruled.

Instruction 1, given by the court, was as follows:

"The court instructs you that if you find from the evidence that Paul J. Mathews was the manager of the Wichita office of Dilts & Morgan, Inc., from May 3, 1922, to June 21, 1922, and that said Mathews committed acts of embezzlement during said period of time, if so, and that loss was thereby sustained by Dilts & Morgan, Inc.; and if you further believe from the evidence that neither Dilts & Morgan, Inc., nor plaintiff became aware until January 25, 1923, and during plaintiff's receivership, of any act of embezzlement, giving rise to a claim under said policy, having been committed by said Mathews, or fact indicating such act of embezzlement giving rise to a claim under said policy, and that plaintiff immediately upon be-

coming aware of such act, if any, or fact, if any, notified defendant by telegraph and letter, giving all particulars, then known to plaintiff, addressed to its home office, No. 115 Broadway, New York City, then you are instructed that plaintiff is entitled to recover from defendant, upon the policy sued on, the amount of such loss, if any, not exceeding the sum of ten thousand dollars; and if you further find that defendant on April 3, 1923, refused to pay said loss, if any, in whole or in part, then you are authorized to allow plaintiff interest on the amount of said loss, if any, at the rate of six per cent per annum from the date of defendant's said refusal to pay.''

The instruction is criticized because the petition is based upon the embezzlement of money and the instruction is said not to be so limited. There was no evidence in the case tending to show the embezzlement by Mathews of any property of Dilts & Morgan except money. The instruction is further criticized because it did not limit the recovery to the items claimed by plaintiff. There was no testimony tending to prove embezzlement by Mathews of other than the six items claimed by plaintiff, except the proof tending to show defalcations in 1920 and a shortage occurring during a former employment of Mathews. The jury could not possibly have been misled into allowing plaintiff to recover for embezzlement of property other than money or for items other than the six items specifically claimed and around which all of the testimony in a trial of several days' duration centered. If defendant feared such confusion upon the part of the jury, it was its duty to ask an instruction on that subject.

Instruction 1 is further assailed on the ground that it did not tell the jury ''with reference to each item claimed by the plaintiff what facts in reference to that item they would have to find to be true before they could find an embezzlement on that item.''

By Instruction 3 the court undertook to define embezzlement as that word was used in the instructions. The correctness of that instruction has been assailed and will be considered later. It certainly was not required that the court should repeat the definition of embezzlement as to each item when it had once told the jury that it could find against defendant only for loss caused by embezzlement and had properly defined that word.

The contention as to the allowance of interest will be noticed in our consideration of defendant's contention that the verdict was excessive.

Instruction 3 was as follows:

''The court instructs you that by word 'embezzlement,' as used in these instructions, is meant the fraudulent and intentional appropriation of the money or property of another to his own use or

the use and benefit of another, by a person to whom it has been entrusted or into whose hands it has lawfully come. And in this connection the court instructs you that to constitute such fraudulent and intentional appropriation such person need not appropriate the money or property to his own use, but has committed embezzlement if he fraudulently and intentionally appropriates it to the use and benefit of another.''

The criticism leveled against this instruction is that it failed to require the jury to find that the appropriation of the property was without the consent of the owner. It required the jury to find that the appropriation was ''fraudulent.'' A fraudulent appropriation of the property of another is utterly inconsistent with consent to such appropriation on the part of the owner. If defendant desired a more explicit instruction on this subject, it should have prepared it and asked the court to give it. Instruction 3 did not amount to misdirection and no error was committed in giving it in that form.

It is contended that the claim of appellant was not presented in time because the bond provided that claims under it must be presented within three months after the expiration of its coverage. No notice of the claim in suit was given until seven months after the bond expired. However, the notice was given immediately upon discovery by plaintiff of the defalcations of Mathews. The policy further provided that assured should give notice immediately upon becoming aware of any act of an employee affecting the liability of defendant and that assured should file itemized statements, etc., within sixty days after the discovery of such loss. The two provisions are utterly inconsistent where such discovery is not made within three months after the bond has expired.

Without regard to that, defendant clearly waived the requirement that the claim should be presented within three months after the expiration of the bond, even assuming that it could at one time have made such a defense. It clearly waived such defense by failing to disclaim liability on that ground by undertaking to investigate the claim and by putting plaintiff to the trouble and expense of making proof of loss, after it had knowledge of such defense.

Error is assigned because the court excluded the deposition of Dewey Hunter. The matter covered by the deposition went to the defense of breach of warranty, which we have held to have been waived by defendant. Hence, the propriety of the exclusion of Hunter's deposition need not be considered.

Complaint is made because the court struck out the testimony of witness Testard as to the contents of the bank's collection blotter and messenger's report bearing on the $5000 Stebbins item. No objection to the ruling of the court, on the ground that an objection of

that character had not been lodged when the deposition was taken at Wichita, Kansas, was made when the court struck out the testimony. Nor did defendant urge that secondary evidence of the contents of such records was admissible because the originals were shown to be outside of the State of Missouri, as it contends here. The witness had detailed his conclusions as to what such records disclosed without undertaking to testify to the actual contents thereof. The motion to strike out was based on the ground that the records were the best evidence of their contents. Defendant merely excepted to the ruling of the court without attempting to offer secondary evidence of their contents and is now in no position to predicate reversible error upon such ruling.

We do not regard it as prejudicial error that the court permitted witness Morgan to testify that A. C. Houston did not have a credit with Dilts & Morgan in the sum of $2000. The check register and Mathews' daily report were before him and showed that this check was charged to one McCready. The witness was evidently testifying from the records and not from his individual knowledge and, even if his answer was improper, we do not regard it as prejudicial error in view of the entire record, including Houston's rather unconvincing testimony that Dilts & Morgan was indebted to him in that sum.

The judgment is said to be excessive by $1075. This undoubtedly represents the jury's calculation of interest at six per cent on $10,000 from April 3, 1923, the day when defendant disclaimed liability, until January 19, 1925, the date the verdict was returned by the jury. Such interest amounts to that sum exactly. There is accordingly no reason for thinking that the jury might have allowed plaintiff for loss by embezzlement in addition to $10,000, the limit of defendant's liability on the bond.

But defendant contends that this is a penal bond and that plaintiff cannot recover interest in excess of the penalty of the bond. Hence the verdict is said to be excessive. Defendant cites Board of Education v. National Surety Company, 183 Mo. 166, 82 S. W. 70, in support of its contention.

This is not a penal bond. A penal bond is "a bond promising to pay a named sum of money (the penalty) with a condition underwritten that, if a stipulated collateral thing, other than the payment of money, be done or foreborne, as the case may be, the obligation shall be void." [Black's Law Dictionary (2 Ed.) p. 886; 6 Words & Phrases, 5269; Burnside v. Wand, 170 Mo. 531, 71 S. W. 337.]

By the bond in suit defendant simply agreed "to make good . . . any loss," etc. On April 3, 1923, when defendant improperly refused to make good the loss of plaintiff and that loss exceeded

$10,000, defendant's liability in the sum of $10,000 became due and payable as of that date, and no reason appears to us why the legal rate of interest on appellant's demand should not be allowed from that date under the provisions of Section 6491, Revised Statutes 1919. We do not think it necessary to consider cases cited by plaintiff in support of his contention that a fidelity bond is an insurance contract and that interest in excess of the stated liability may be imposed in a proper case. The bond issued by defendant was a simple contract to pay money up to a certain amount. When plaintiff became entitled to the payment of money within the terms of such agreement and defendant wrongfully withheld payment thereof, defendant became liable for the payment of interest on the amount due plaintiff, even though the amount due plaintiff, plus such interest, exceeded the amount defendant bound itself to pay by the terms of its bond. The verdict was not excessive on that account.

We have carefully considered all of the assignments of error presented in defendant's brief. The case was carefully tried by an able trial judge. The record discloses no reversible error. The judgment of the circuit court should be and is affirmed. All concur.