THOMAS J. KALLAUNER, RESPONDENT, v. CENTRAL MUTUAL INSURANCE ASSOCIATION, APPELLANT.—70 S. W. (2d) 134.

Kansas City Court of Appeals. April 2, 1934.

*Elliott & Crouse* for respondent.

*Irwin & Bushman, Harry L. Buchanan, John J. Cosgrove* for appellant.

BLAND, J.—This is a suit upon two policies of life insurance in the sum of $1,000 each. At the close of all the testimony the court directed a verdict for the plaintiff, resulting in a verdict and judgment in his favor in the sum of $2101.66. Defendant has appealed.

The policies in question were issued by the defendant in the year 1930 to one Marie E. Stone Kallauner, upon her life and in favor of the plaintiff as beneficiary. The policies were identical in every respect except as to dates.

As a defense the answer pleaded that an assessment had been levied against each policy on the 15th day of March, 1931; that the assessment was not paid within 30 days as required by the laws of the company, for which failure, the policies, under its laws, lapsed and became null and void.

The laws of the defendant provided that the mailing, at Jefferson City, of a notice of an assessment, directed to the last known address of the member, should constitute notice from the day of its mailing and should the member fail to pay the assessment within the time specified in the notice he should *ipso facto* become suspended and be no longer entitled to receive the benefits in case of death; that when a member should fail for a period of 30 days to pay the assessment he should *ipso facto* become delinquent and the beneficiary named in the certificate should have no claim on the association, unless reinstated.

The evidence shows that an assessment was made on March 15, 1931, and that notice was, upon said date, mailed to the insured herein. There is no evidence as to within what time she was given to pay the assessment, but it seems to be admitted by the parties that the assessment was due and payable at once, and if not paid within 30 days, or by April 15, 1931, the policies were forfeited. But it is contended by plaintiff that forfeiture was waived by reason of the following facts.

On March 23, 1931, insured mailed to the defendant her check in the sum of $2, being the amount of the assessment levied upon the policies. This check was returned to the defendant by the bank upon which it was drawn marked "Insufficient Funds." The insured sent defendant another check in the sum of $2, dated May 22, 1931, which was likewise returned by the bank for insufficient funds. There is no evidence for what purpose the second check was

given but the inference is that it was to pay an assessment subsequently to the one made on March 15, 1931.

On June 16, 1931, defendant mailed insured a notice of a third assessment for $1 on each of the policies. This notice stated that the assessment "must be paid in 15 days for *you to remain in good standing.*" (Italics ours.) The insured died on June 21, 1931, without having done anything further as to the payment of any of the assessments. On June 24, 1931, defendant, without knowing of the death of insured, wrote her that "under the dates of April 2 and June 10, 1931, we wrote you a letter telling you that two of your checks had been returned to us marked 'Insufficient Funds;' " that one of the checks was dated March 23, 1931, and the other May 28, 1931. The letter concluded as follows: "Kindly let us have a post office money order for four dollars to take the place of these checks that were returned to us. Upon receipt of the money in payment of same we will then return your old check(s) to you."

After the death of insured plaintiff mailed to defendant a money order in the sum of $4, without advising it of the death of the insured, and requesting the return of the two checks. This letter was received on June 27, 1931. On June 30th of that year defendant first learned that insured had died and the two checks were returned. But defendant, before learning of the death of insured, cashed the money order and still retains the $4 it received thereon. The answer, which was filed on October 3, 1932, alleges that this money "is herewith tendered into court," but there is no evidence that it was so tendered.

Defendant contends that the quesion of waiver is not in the case because it is not pleaded by the plaintiff. It admits that had the petition pleaded performance it would have been broad enough to permit the introduction of evidence showing waiver. An examination of the petition shows that it does not plead performance but merely that the policies were in full force and effect. Whether the petition is broad enough to permit the showing of waiver we need not say for the reason that the question is properly in the case as it was tried upon the theory that waiver was pleaded, there being no objection to the admission of testimony on behalf of plaintiff tending to show the same. [Dammert v. Kennefick, 261 S. W. 78, 82.] We think there is no question but that defendant, as a matter of law, waived the forfeiture of the policies based upon the nonpayment of the assessments. In the first place at least one assessment was levied against insured after she had made default in the payment of the one levied in March, 1931. It was the nonpayment of the March assessment upon which this defense is based. We have no quarrel with the statement that, where the insured is *ipso facto* suspended for nonpayment of premiums or assessments, the policy cannot be renewed after the death of insured.

However, in one of the cases cited by the defendant upon this point (Harvey v. Grand Lodge, 50 Mo. App. 472, 477), the court, in distinguishing that case from certain foreign cases, stated, 1. c. 476:

"In the Wisconsin case, the insurance company made an assessment against the deceased after he had made default for a prior assessment, for the nonpayment of which it was claimed there was a forfeiture of all rights under the certificate of insurance sued on. It is clear that these cases, in their essential features, present not the slightest resemblance to the case at bar. In those cases there was, after the occurrence of the act for which the forfeiture was claimed, a distinct recognition by the insurer that the insured was still one of its members. The insurer, in such case, upon every just principle, ought to be estopped to claim a forfeiture of the membership of the insured or his rights as such. A waiver of strict performance in such case was necessarily implied."

In addition to this the holding for an unreasonable length of time, and the continued efforts to collect the checks and notifying insured on June 16, 1931, in effect, that she then remained in good standing, constituted waiver. While a check does not ordinarily constitute payment, except when so agreed, the one given for the March assessment undoubtedly did become such in this case. In the case of Veal v. Sec. Mut. Life Ins. Co., 65 S. E. 714, the Georgia Court of Appeals, stated, 1. c. 716:

"In case there is no pre-existing debt, and the transaction between the parties is one that would otherwise be on a cash basis, and one party tenders a check and the other takes it and retains it, even after notice of dishonor, the necessary legal effect is that the check is held in lieu of cash. It is readily conceivable that in many cases a creditor having the privilege of accepting the cash only would prefer to hold the debtor's check (his promissory writing bearing seven per cent interest) to rescinding the trade. In the case at bar, so long as the insurance company held Veal's check he was absolutely liable to them for the principal and interest on it. How could the company consistently retain this liability against him, and still insist that his policy was void because the premium had not been paid in cash? It is important, too, to note that the policy contained no provision making the failure of the insured to pay at maturity any note or check taken in lieu of cash a ground of forfeiture. . . .

"We would not be understood as saying that if a policy holder sends a check in payment of his premium, and the company merely sends the check for collection, a payment of the premium results from this alone if the check is dishonored. Commercial usage is to the contrary. If, when the company in the present case discovered that the check had been dishonored, it had within a reasonable time tendered

the check back to the insured, it could justly have insisted that the policy had lapsed.''

Defendant could not insist upon payment of the checks and at the same time say the policies had been forfeited for their nonpayment and remained forfeited. It is inconsistent for it to say that it is not bound by the policies, when on April 2nd, June 10th and June 24th, it was asking the insured to pay the checks given in payment of the assessments. [New England Mutual Life Ins. Co. v. Springgate (Ky.), 112 S. W. 681. See, also, Roberts v. Am. Nat'l Assur. Co., 220 S. W. 996; Loftis v. Pac. Mut. Life Ins. Co., 114 Pac. 134; McDonald v. Equitable Life (Ia.), 169 N. W. 352. Under the circumstances it is unnecessary for us to pass upon the question as to what effect the action of the defendant in retaining, for such a length of time, the $4 that it received on the money order without tendering back the same.

However, it is insisted by the defendant that if there is any evidence of waiver the question should have been submitted to the jury upon proper instructions. In this case, the facts were not only undisputed but were admitted and they are not subject to different inferences. There is but one reasonable conclusion that can be drawn from them and that is that the forfeiture was waived. There was no occasion to submit the matter to the jury. [Macon v. Mo. Mut. Ass'n, 60 S. W. (2d) 402, 407; Goffe v. Nat'l Surety Co., 9 S. W. (2d) 929, 933.]

The judgment is affirmed. All concur.