14010

NOCK v. FIDELITY & DEPOSIT CO. OF BALTIMORE, MD.

(178 S. E., 839)

*Messrs. W. F. Stevenson* and *P. A. Murray, Jr.,* for appellant,

*Messrs. Leppard & Leppard* and *M. J. Hough,* for respondent,

March 4, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Cheraw Cotton Oil Company, Incorporated, brought its action against Fidelity & Deposit Company of Maryland as surety on the bond of John F. Cahill as assistant treasurer of Cheraw Oil & Fertilizer Company, alleging a loss to the company through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction of said John F. Cahill. This action was begun October 3, 1927. The defendant

served its answer to this complaint October 8, 1927. January 29, 1930, M. C. Thomason, as assignee of Cheraw Cotton Oil Company, Incorporated, by order of the Court, was substituted as plaintiff in the stead of that company, with leave to amend his complaint as he might be advised.

On or about June 16, 1931, by order of Court, the North Carolina Bank & Trust Company, as administrator of the estate of M. C. Thomason, then deceased, was substituted as plaintiff in the place and stead of M. C. Thomason.

July 18, 1931, North Carolina Bank & Trust Company, as administrator of the estate of M. C. Thomason, deceased, assigned the bond, claim, and action to John D. Nock, who was thereupon, by order of Court, substituted as plaintiff in the place of North Carolina Bank & Trust Company, as administrator of the estate of M. C. Thomason, deceased.

The complaint alleges the execution by the defendant of its policy of insurance whereby it undertook to indemnify Cheraw Oil & Fertilizer Company against loss of any money or personal property through the fraud, dishonesty, theft, forgery, embezzlement, or wrongful abstraction of John F. Cahill, assistant treasurer of said corporation, in a sum not exceeding $5,000.00; that, while this policy was in force, the Cheraw Oil & Fertilizer Company incurred a loss of $2,027.50 through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction of John F. Cahill; that notice of loss was duly given the defendant, proper proofs of loss were submitted, and all the requirements of the policy of insurance on the part of the plaintiff were complied with, and demand made for payment by defendant of its liability, which defendant admitted and promised payment, but which it has neglected and refused to make, that the policy of insurance and all right, title, interest, and estate of the Cheraw Oil & Fertilizer Company thereon and in this action has, by successive mesne conveyances, for valuable consideration, been duly assigned to this plaintiff, who is now the legal owner and holder thereof.

The answer sets up a general denial; admits its corporate capacity and the execution and delivery of the bond of indemnity as alleged; admits on information and belief that John F. Cahill drew from the funds of Cheraw Oil & Fertilizer Company $2,027.50 with full knowledge of the company, as a bonus which had been promised him and all other employees by M. C. Thomason, the general manager and president of the company; admits that Cheraw Oil & Fertilizer Company made some claim which defendant refused to pay; admits that the amount due by John F. Cahill to Cheraw Oil & Fertilizer Company was transferred and conveyed to Cheraw Cotton Oil Company, but denies that any transfer was ever made to M. C. Thomason, and alleged that the attempted transfer of such claim by North Carolina Bank & Trust Company, as administrator of M. C. Thomason, deceased, unto this plaintiff, was a nullity and of no effect, and denies the plaintiff has any title to or interest in said account; it admits demand and refusal to pay, but denies that it ever promised to pay this claim, and denies liability thereon.

All the pleadings were duly verified.

The case came to trial before Judge Rice and a jury at the fall term of the Court of Common Pleas for Chesterfield County November 20, 1933; the jury returned a verdict for the plaintiff in the sum of $2,909.36. Defendant's motion for directed verdict was overruled, as was the motion for new trial. This appeal followed; it is predicated upon twelve exceptions, but not so many questions are to be answered. The two cardinal questions for determination are these:

Did John F. Cahill take from the funds of Cheraw Oil & Fertilizer Company $2,027.50, without the knowledge and consent of the officers of the company, and in violation of the conditions of the bond of indemnity?

Is the plaintiff the lawful owner and holder of this claim?

Necessarily there are questions subsidiary to each of these main questions.

These significant allegations of the answer should be borne in mind as we consider the issues:

The admission "that John F. Cahill drew from the funds of Cheraw Oil & Fertilizer Company $2,027.50."

"This defendant admits that the account *due by John F. Cahill to Cheraw Oil & Fertilizer Company in the sum of $2,027.50 as aforesaid,*" etc.

Exceptions 1 and 4 allege error for that his Honor admitted the testimony of the plaintiff, John D. Nock, to the effect that John F. Cahill had admitted in his presence that he had taken from the funds of Cheraw Oil & Fertilizer Company the sum of $2,027.50; and for that he admitted the testimony of Samuel Want to the effect that John F. Cahill had admitted to him that he had taken these funds.

The specifications of error are that the admissions were not a part of the *res gestae* and were not admissible against the surety.

It may be premised that at the time the admissions were made in the presence of Mr. Nock he was not then the owner of this claim and plaintiff in this action.

It appears from the record that Cahill's accounts had been submitted to an accountant, who reported the abstraction of the funds by him. The plaintiff, then the attorney of the Cheraw Oil & Fertilizer Company, was called to a conference with Thomason and Duval, officers of the company, at which John F. Cahill and the auditor were present. The plaintiff testified that John F. Cahill then and there made the confession that he had abstracted from the funds of the company the sum of money which the audit showed was taken.

The witness Samuel Want testified that John F. Cahill admitted to him in his office at Darlington that he was short in his accounts with Cheraw Oil & Fertilizer Company.

Was the testimony of these two witnesses admissible as a

part of the *res gestae?* Was it admissible as against the surety?

There can be no doubt that the strictness of the rule of *res gestae* has been much relaxed of late years.

The specific contention of appellant is that, when Cahill made the statements objected to, he was no longer in the employ of the Cheraw Oil & Fertilizer Company, and his admissions related to past transactions. It appears from the record that, when the admissions were made, the Cheraw Oil & Fertilizer Company was in the hands of a receiver; this did not dissolve the corporation nor change the ownership of its assets. 23 R. C. L., 46; *Pollock v. B. & L. Ass'n,* 48 S. C., 65, 25 S. E., 977, 59 Am. St. Rep., 695, 53 C. J., 93-95.

Mr. Chief Justice Blease, in the case of *Price v. Am. Agr. Chem. Co.,* 173 S. C., 518, 176 S. E., 352, 354, considering the rule of *res gestae,* quoted with approval from Jones' Commentaries on the Law of Evidence the following:

" 'The present attitude of the Courts, it may be said, is to regard primarily the circumstances. Although it appears that the particular declarations, explanations, or statements were made after the occurrence in question, if it also appears that the principal occurrence was such as would be likely to cause more than passing mental effect, and that the conduct of declarant was such as to show that its effect still continued as to him, and the declaration is relevant and relates to the occurrence, it is admissible.' * * *

"The *res gestae* rule may not be so narrowly construed as to exclude declarations merely because they did not occur 'on the very instant of the grinding of the flesh and bones.' "

Quoting from the same work, we have: "The trend of judicial decision is undoubtedly in the direction of relaxing the rule of absolute and identical contemporaneousness. Mr. Justice Swayne, in the United States Supreme Court, emphasizes the substitution of 'nearly contemporaneous.' The *res gestae* are the statements of the cause made by the as-

sured almost contemporaneous with its occurrence, and those relating to the consequences made while the latter subsisted and were in progress. * * * The *res gestae* are the declarations tending to show the reality of its existence, and its extent and character. The tendency of recent adjudications is to extend rather than to narrow the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results. There is none which rests on a more solid basis of reason and authority."

The statements of plaintiff and Mr. Want relate to statements made by Cahill at the time of, and soon after the discovery of, the shortage in his accounts.

In the case of *Halsey v. Minn., etc., Timber Co.*, 174 S. C., 97, 177 S. E., 29, 35, the question of *res gestae* and the admissions of an agent as evidence against his principal was considered.

Mr. Montague was the agent of Minn., etc., Timber Company in the sale of certain timber lands to Mr. Halsey. Two years after the sale, a shortage in the amount of timber warranted was discovered and reported to Mr. Montague. On the trial of the case which followed, it was offered by plaintiff to prove what Mr. Montague said to Mr. Halsey and others when he was informed of the shortage. It was objected to on the ground that it was not a part of the *res gestae;* that Mr. Montague was no longer the agent of the timber company and his declarations were not admissible against the company. This Court said: "But it is argued that this occurred two years after the purchase of the timber, and that as Montague was no longer the agent of the Timber Company his statements relative to the alleged shortage were incompetent and could not bind the Timber Company. We are not prepared to admit the truth of the proposition. It seems to us only fair and reasonable to hold that if Montague was the agent of the Timber Company in the sale of the timber, and made representations relative to the properties,

and such representations proved to be untrue, he was still the agent of the Timber Company thereabout until the transaction was finally closed. * * * May not this be rightfully termed a part of the *res gestae* of the contract of sale? We think this conclusion is within the rule stated in the case of *Snipes v. A. A. Ry. & Elec. Corp.*, 151 S. C., 391, 149 S. E., 111, 112. There the majority opinion said: 'It cannot be denied, under the case of *Williams v. Telegraph Company*, 138 S. C. [281], 286, 136 S. E., 218, that where a statement was made by an agent of a corporation, while still about the instant business of the corporation, it would be admissible on the theory that such statement was, although not a part of the *res gestae* as to the immediate transaction, a part of the *res gestae* as to the general transaction in its entirety."

The case of the *Treasurers of State v. Bates*, 2 Bailey, 362, was an action on the official bond of Bates, as former sheriff, for moneys converted by him in his official capacity. An issue arose over the admission, as evidence against his sureties, of statements made by Bates. The appellate Court said: "His admission of an official default is evidence against himself and his sureties, no matter when made."

The record discloses that counsel for the appellant cross-examined Mr. Nock and Mr. Want on the matters objected to without any reservation.

In the case of *Snipes v. Augusta & Aiken Ry. & Electric Corporation*, 151 S. C., 391, 149 S. E., 111, this is said, quoting syllabus: "Any error in admitting testimony over objection is cured, where similar testimony is brought out without reservation of the objection."

Exception 2 charges error for that the witness Nock was allowed to refer to a memorandum made by Mr. Nock at the time of the consultation over the report of the auditor of Cahill's defalcation of the statements then made by Cahill. This memorandum was signed by all of those present except Cahill, who admitted its correctness.

Mr. Nock had testified independently of the memorandum to the same effect. The only purpose of the introduction of this memorandum was to prove the abstraction of the money by Cahill.

A letter was received from the appellant by Mr. Nock, under date of September 1, 1927, containing this significant language: "Mr. Cahill maintains there are no discrepancies in his accounts and demands that we refuse to recognize the claim filed against his bond by Cheraw Oil & Fertilizer Company. In view of this position taken by Mr. Cahill, we must respectfully advise you that we will be unable to entertain your claim unless the same be reduced to judgment."

It will be seen that the defendant in September, 1927, based its refusal to entertain the claim upon the demand of Mr. Cahill, who declared that there were no discrepancies in his accounts; this was after he had in June, 1927, admitted his shortage. Thereafter the appellant in its answer to the complaint said: "John F. Cahill drew from the funds of Cheraw Oil & Fertilizer Company $2,027.50 with full knowledge of the officers of the Company, etc." And again in the answer it is said: "This defendant admits *that the account due by John F. Cahill to Cheraw Oil & Fertilizer Company in the sum of $2,027.50 as aforesaid,*" etc. (Italics added.)

Since the only purpose of the introduction of the memorandum was to prove the admission by Cahill of the abstraction of the funds of the company, it is patent that the error, if there was error, was harmless.

This also disposes of Exception 3, which assigns error for the introduction in evidence of the checks drawn by John F. Cahill, covering the money admitted to have been taken by him.

Exceptions 5 and 6 charge error to the Circuit Judge for refusing to admit in evidence an audit of the affairs of Cheraw Oil & Fertilizer Company, made at the instance of the heirs of the estate of J. A. Watson in

a matter then pending between him and M. C. Thomason. It had no relation to the present action. The audit was not proved by any one. Moreover, it appears from the record that appellant's counsel was given the opportunity to point out every item of the audit which was thought to be relevant to this suit. The exceptions are without merit.

Exception 7 charges error for that the presiding Judge refused to admit in evidence the testimony of John F. Cahill before the Master in the case of *R. R. Thurman v. Cheraw Oil & Fertilizer Company.* There was no error here. The circumstances under which the testimony of a witness, given at another trial, may be admitted, are thus stated in the case of *Wells v. Drayton,* 1 Nott & McC., 409, 411: "The books enumerate four cases only, in which the testimony of a witness *who has been examined in a former trial, between the same parties, and where the point in issue was the same,* may be given in evidence, on a second trial, from the mouths of other witnesses, who heard him give evidence: 1st. Where the witness was dead. 2nd. Where he was insane. 3rd. Where he was beyond seas; and 4th. Where the Court was satisfied that the witness had been kept away by the contrivance of the opposite party." (Italics added.)

It will be seen that this evidence offered in the present case was properly excluded because it was not given in a case between the same parties. This rule is sustained by this Court in an opinion written by Mr. Justice Woods in the case of *McCall v. Alexander,* 84 S. C., 187, 65 S. E., 1021.

Exceptions 8 and 9 were not argued in the brief of appellant, and under the rule are deemed to be abandoned.

Exceptions 10, 11, and 12 relate to the force and effect of evidence about which more than one inference could be drawn. The questions thus made by the evidence referred to by these exceptions were essentially for determination by the

jury. It would have been error for the Court to have taken them from the jury and to have decided them itself.

There was ample evidence to sustain the position of this plaintiff that he is the lawful owner and holder of the claim upon which this action is based. It was relevant testimony which was properly submitted to the jury, and their finding thereon is justified.

All exceptions are overruled, and the judgment of the Court below is affirmed.

MR. JUSTICE CARTER and MESSRS. ACTING ASSOCIATE JUSTICES E. C. DENNIS and C. J. RAMAGE concur.

MR. JUSTICE STABLER concurs in result.