**AMERICAN MUTUAL LIABILITY IN-
SURANCE COMPANY, Appellant,**

v.

**THOMAS & HOWARD COMPANY OF
COLUMBIA, SOUTH CAROLINA,**
Appellee.

No. 7021.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 10, 1955.

Decided Dec. 30, 1955.

Joseph L. Nettles, Columbia, S. C., for appellant.

David W. Robinson and Clarke W. Mc-Cants, Jr., Columbia, S. C. (Robinson, McFadden & Dreher, Columbia, S. C., on the brief), for appellee.

Before PARKER, Chief Judge, DO-BIE, Circuit Judge, and THOMSEN, District Judge.

PARKER, Chief Judge.

This is an appeal by an insurance company from a judgment in favor of the insured in an action on a comprehensive crime policy. The insured is a wholesale grocery company doing business in Columbia, S. C. and a number of other cities. The policy, which insured the various branches of its business, covered dishonesty of employees, loss of money and securities within premises, loss of money and securities outside premises as a result of wrongful abstraction by or robbery of a custodian and forgery of accepted instruments. Other subjects were covered by the printed language of the policy, such as forgery of issued instruments, loss of valuable papers etc., but these were not embraced in the coverage because premiums were not paid with respect thereto. It is proper, however, that they be considered in interpreting the meaning of general provisions where these are relied upon as applicable to a risk which is covered. The provision here involved is that relating to dishonesty of employees and the pertinent portion thereof is as follows:

"A—*Dishonesty of Employees*

"To indemnify the insured for loss through dishonesty or fraud of the employees, whether acting alone or in collusion with others, of money, securities and other property, including that part of any inventory shortage which the insured shall conclusively prove to have been caused by dishonesty or fraud on the part of any of the employees.

"If loss is alleged to have been caused by the dishonesty or fraud of any one or more of the employees, and the insured shall be unable to designate the specific employee or employees causing such loss, the insured shall nevertheless have the benefit of this coverage provided that the evidence submitted in case of inventory shortage conclusively and in all other cases reasonably establishes that the loss was in fact due to the dishonesty or fraud of one or more of the said employees."

The defense of the company is based upon general provisions of the policy with respect to records and proofs of loss, which are as follows:

"9—*Records*

"The insured shall keep verifiable records of all property covered by this policy. * * * ".

"11—*Notice and Proof of Loss*

"As soon as practicable but in any event not later than fifteen days after discovery by the insured of any loss or of any occurrence which may give rise to a claim the insured shall give the Company or any of its authorized representatives written notice thereof, and within four months after such discovery shall file with the Company affirmative itemized proof of loss duly sworn to. * * * ".

The claim of the insured arises out of theft by truck drivers and warehouse employees. The latter would load on trucks articles of merchandise not covered by invoices and the truck drivers would sell these to dishonest retail grocers and divide the proceeds with the dishonest warehouse employees. Insured discovered this practice in one of its other stores and employed a detective to investigate conditions at the Columbia store. The detective discovered five of the truck drivers there engaged in the practice and, when he accused them of their dishonesty and confronted them with the proofs which he had obtained, they admitted their guilt and made statements as to the extent of their stealing. As no records of the stealing were kept by them at the time, their statements consisted necessarily of statements as to how long the stealing had been going on with estimates as to the amount and value of the goods stolen. These statements were reduced to writing and were sworn to by them and were attached by the insured to the proofs of loss filed with the company and were admitted in evidence to establish the amount of loss on the trial of the case. They showed an aggregate loss sustained by the company of $17,000 as a result of the stealing. Three of the drivers, whose dishonesty accounted for $15,000 of this amount, testified on the trial to the matters covered by their affidavits. The verdict of the jury was for the sum of $13,500.

The principal contention of the company is that there was a failure on the part of the insured to keep the records required by the policy. As to this, however, it will be noted that the policy does not require what records the insured shall keep or the form in which he shall keep them but merely "verifiable records of all property covered by this policy"; and the evidence is to the effect that the insured kept verifiable records with respect to such property and the sort of records which it was customary to keep in the wholesale grocery business in that section. At the end of each year an itemized inventory was taken of stock on hand, and this was preserved together with invoices covering all subsequent sales and purchases. This has been held

552

sufficient for the purposes of the "iron safe" clause in fire insurance policies to take the case to the jury against a defense based on that clause. Liverpool & London & Globe Ins. Co. v. Dillon, 4 Cir., 16 F.2d 774; Lumberman's Mutual Ins. Co. of Mansfield v. Johnson Lumber Co., 5 Cir., 53 F.2d 940; L. T. Madden & Co. v. Phoenix Ins. Co., 70 S.C. 295, 49 S.E. 855; Cobb & Seal Shoe Store v. Aetna Ins. Co., 78 S.C. 388, 58 S.E. 1099; McMillan v. Ins. Co. of North America, 78 S.C. 433, 58 S.E. 1020. A fortiori, it should be sufficient here, where claim is made, not under the inventory shortage provision of the policy, which would be analogous to claim under a fire policy, but for loss through dishonesty of identified employees which is established without reference to inventory shortage.

It is argued that the policy requires the keeping of books from which any loss can be determined without resort to extraneous evidence, and error is assigned because the trial judge refused to so charge the jury; but the policy does not require the keeping of "books" at all but of "verifiable records". Certainly the keeping of the annual inventories with invoices of subsequent purchases and sales was the keeping of "verifiable records". The evidence is that from these it was possible to determine at any given time what goods were on hand although this would require labor and expense. The fact that they were available and subject to examination by the company, if it had desired to examine them, was a protection against fraudulent claims on the part of the insured, and this was manifestly the purpose of the provision in the policy, not to prescribe the method of proof in case of loss. The law applicable was correctly stated by the learned District Judge in his charge where he said:

"I charge you that the policy here sued upon provides as one of its conditions, that the insured shall keep verifiable records of all property covered by this policy. While no particular form of books and records

are required by such a provision, it does require the insured to keep such books and records as will accurately reflect the amount of a loss which he claims."

If the company had intended that no loss might be proved under the policy except from the records of the insured, it would have been easy to insert such a provision in the policy, although it might have been difficult to sell a policy containing such a provision. The policy contained no such provision, however, and the company's agent was fully advised that the insured did not keep what is known as a perpetual inventory, which would have facilitated this sort of proof. The evidence is that, shortly after the insured agreed to take the policy and binder had been issued, an agent of the company recommended to insured that it install a perpetual inventory system and that insured refused to do so on the ground that such system was not practical in its business and was not used by similar businesses in that section. After this the company issued the policy. Without going into any question of waiver, it is perfectly clear that it was not intended that proof of loss under the policy should require what was in effect the keeping of a perpetual inventory when there was no language in the policy to that effect.

The company relies upon our decision in Dickerson v. Franklin National Ins. Co., 4 Cir., 130 F.2d 35; but nothing decided in that case sustains its position. The holding there was that failure to take an inventory as required by the "iron safe" clause was fatal to the rights of the insured. It was there said that the purpose of the iron safe clause was to provide records from which the loss could be determined with reasonable certainty; but it was not held that any form of bookkeeping must be followed or that proof of loss could be made only from books and records; and it was assumed that the preservation of the invoices of sales was a sufficient compliance with the requirement for keeping records of

sales. As pointed out above, the inventories and invoices which were kept by the plaintiff here are "verifiable records" covering the property and the loss could be determined from them. It is no answer to this that to so determine the loss would involve labor and expense. If the company desired records from which the loss could be promptly determined, as from a perpetual inventory, it should have made provision to that effect in the policy.

 The company complains because the statements made by the truck drivers were admitted as evidence to establish the loss sued for. It appears, however, that the statements were made by these employees at the time they were accused of the thefts and are clearly admissible under the decision of the Supreme Court of South Carolina in Nock v. Fidelity & Deposit Co., 175 S.C. 188, 178 S.E. 839, 98 A.L.R. 757. See also Hartford Accident & Indemnity Co. v. Collins-Dietz-Morris Co., 10 Cir., 80 F. 2d 441; Guarantee Co. of North America v. Phenix Ins. Co., 8 Cir., 124 F. 170; Indemnity Ins. Co. of North America v. Krone, 177 Ark. 953, 9 S.W.2d 33, 60 A.L.R. 1493; American Surety Co. v. North Texas Nat. Bank, Tex.Civ.App., 14 S.W.2d 88, reversed on other grounds Royal Indemnity Co. v. North Texas Nat. Bank, Tex.Com.App., 25 S.W.2d 822; Piggly Wiggly Yuma Co. v. New York Indemnity Co., 116 Cal.App. 541, 3 P.2d 15; United American Fire Ins. Co. v. American Bonding Co. of Baltimore, 146 Wis. 573, 131 N.W. 994, 40 L.R.A.,N.S., 661; and Cf. Goffe v. National Surety Co., 321 Mo. 140, 9 S.W.2d 929; Glens Falls Indemnity Co. v. Gottlieb, 80 Ga. App. 634, 56 S.E.2d 799; John T. Stanley Co. v. National Surety Corp., 179 Misc. 493, 39 N.Y.S.2d 509; Marcus v. Fidelity & Deposit Co. of Maryland, 164 App.Div. 859, 149 N.Y.S. 1020.

If the question were an open one, we should hesitate to hold that such statements come within the res gestae rule. Under Rule 43(a) of the Rules of Civil Procedure, 28 U.S.C.A., however, they must be held admissible because admissible under the rule of evidence applied in the courts of the State of South Carolina where the case was tried. Furthermore, the three witnesses who admitted thefts in an amount in excess of the verdict of the jury testified in the case and were subjected to cross examination. In view of this, even if the statements were inadmissible in evidence, it would be difficult to say that their admission should be held to be prejudicial error.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.