### WALLACE v. MOBLEY

(112 S. E. 264)

1. VENDOR AND PURCHASER—SALE OF FARM LAND HELD IN GROSS, AND NOT BY ACRE.—A sale of a described part of a farm for a stated sum, the property being described as containing a stated number of acres, was a sale in gross, and not a sale by the acre.

2. VENDOR AND PURCHASER—WHERE NO FRAUD IN SALE IN GROSS HELD NO COMPENSATION FOR DEFICIENCY.—Where land is sold in gross, and there is no misrepresentation or fraud, no compensation will be granted for a deficiency.

3. VENDOR AND PURCHASER—CONTRACT CONSTRUED AS ENTITLING PURCHASER TO REFUND OF PRICE ONLY IF DEFECT IN TITLE COULD NOT

BE CORRECTED.—Where a contract for the sale of realty contained a provision that, "Should any defect appear in the title, that cannot be corrected, the amount paid shall be promptly paid to buyer," the amount paid as purchase money was not to be refunded unless there was a defect in the title which could not be corrected.

4. VENDOR AND PURCHASER—DIFFERENCE BETWEEN DESCRIPTION IN CONTRACT AND IN DEED HELD IMMATERIAL.—The difference between a description in a contract and that of the deed which was tendered *held* of no practical importance.

Before MOORE, J., York.　July, 1921.　Reversed.

Action by Quinn Wallace against Albert Mobley. From directed verdict for defendant the plaintiff appeals.

*Messrs. W. W. Lewis* and *John R. Hart*, for appellant. Mr. Hart cites: *Rights of vendee where vendor cannot convey all land contracted for:* 36 Cyc. 738; 29 A. & E. Enc. L., 632. *Specific performance will not be denied for technicalities:* 48 S. E., 824. *Value of deficiency is to be computed as at time of sale:* 27 R. C. L., 435; 1 Parsons Conts., 518. *Sale in gross:* 27 R. C. L., 147 Id., 148., *Performance should be decreed where deficiency is small and would not interfere with enjoyment of lands:* L. McC., 122; 2 Hill., 317; 10 Ves., 505; 29 Cyc., 641. *Abatement in price:* L. Bail., 128. *Where contract is executed, abatement will not be allowed in absence of fraud:* 98 S. C., 286; 48 S. C., 198; 4 Pet., 311.

*Mr. Lewis* cites: *Rights of parties are to be determined as of date of sale:* 14 Am. Dec., 782. *Rights of purchase where there is variation or deficiency:* 14 Am. Dec., 782; 23 Va., 781; 9 S. E., 1079; 7 S. E., 258; 73 N. J. L., 45; 4 Ky. L., 982; 90 N. Y. Sup., 796. *To defeat performance because of defective title, vendee must prove paramount title:* 3 Cal., 228; 4 Cal., 264; 1 Ky. L., 55. *Principles applicable to executory contracts apply also to executed contracts:* 20 A. & E. Enc. L. (2nd Ed.), 348; 101 Mass., 538; 57 Com., 447; 67 Miss., 266; 4 Md., 287; 101 Pa. St., 17; 3 Me., 71; L McC. L., 168. *Rules for locating land:* 4

Rich., 491; 1 McC., 584; 2 Spear L., 68; 112 S. C., 349; 115 S. C., 439. *What vendee is entitled to:* Rice Eq., 57; L. Strob. L., 143.

*Messrs. Thos. F. McDow* and *Wilson & Wilson* for respondent. Oral argument.

May 2, 1922.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

## STATEMENT OF FACTS

This is an action to recover the amount alleged to be due the plaintiff by the defendant, at the time this action was commenced, under the following contract:

"State of South Carolina, County of York.

"Article of agreement between J. C. Wilborn, attorney for Quinn Wallace of York County, S. C., and Albert Mobley of York County.

"Quinn Wallace agrees to sell and Albert Mobley agrees to buy the following.

"A part of the Quinn Wallace farm containing 52.92 acres, more or less, being Nos. 8 and 9 on plat made by James McLarnon, September 1, 1920.

"For the sum of $4,048.38 for sound and unincumbered title for the entire property $404.83 of purchase price is acknowledged to bind the obligation until sound and unincumbered title can be furnished to buyer on or before the 4th day of January, 1921, when the remainder is to be paid as follows: On January 4, 1921, 15 per cent. of purchase price in cash and the balance to be divided into three equal annual payments together with 8 per cent. interest; interest to begin January 1st, 1921. Interest to be paid annually.

"All notes to be secured by mortgage on premises. Quinn Wallace to pay the taxes for the year 1920. Should any defect appear in the title that cannot be corrected, the amount paid is to be promptly refunded to buyer by J. C. Wilborn,

attorney. The buyer is to have the privilege of examining the title not extending beyond the 1st day of December, 1920.

"It is understood by all parties interested that J. C. Wilborn is responsible only for the amount in his hands, but is to use his best efforts to see that the contract is faithfully fulfilled by the buyer and owner.

"In the event of default of payment as above agreed, the said sum of purchase money shall be forfeited to J. C. Wilborn and the owner as a measure of damages for failure of buyer to comply with this contract.

"Said failure shall render this contract null and void.

"This the 9th day of September, 1920.

                "J. C. Wilborn, Attorney        (Seal.)
                "Quinn Wallace, Owner           (Seal.)
                "Albert Mobley, Buyer           (Seal.)

"Witness:

    "W. F. Jackson

    "Hugh Pinnix."

In his answer the defendant says:

"(3) Further answering said complaint and by way of defense thereto, this defendant alleges:

"(a) That on or about the 9th day of September, 1920, he contracted with the plaintiff in writing to purchase a certain tract of land in said County and State, described as follows:

" 'A part of the Quinn Wallace farm containing 52.92 acres more or less, being lots Nos. 8 and 9 on a plat made by James McLarnon, surveyor, September 1, 1920," which said tract is more particularly described on said plat as follows: 'Beginning at old mark on Fishing creek and running hence with line of J. E. Lowry's land S. 79.30° E. 2,991 feet to stake in center of Rock Hill road; thence with center of said road N. 49½° W. 100 feet to stake in center of road; thence N. 24.30° E. 900 feet to pine (N. M.); thence N. 3° W. 645 feet to stake on Hughes

line; thence N. 87.30° W. 1,376 feet to birch on bank of Fishing creek; thence with center of Fishing creek to the beginning corner, containing 52.92 acres, more or less.'

"(b) That the defendant at the time of the execution of said contract paid to the plaintiff the sum of $404.83 in accordance with the terms of said contract. That some time thereafter this defendant was informed that part of the land he had so contracted to purchase was not owned by the plaintiff, but was the Lowry lands, whereupon the defendant notified the plaintiff that unless plaintiff could deliver to defendant the land which he had contracted to purchase that he would not take same; whereupon plaintiff assured defendant that he would make delivery of the land in accordance with the contract of purchase.

"(c) That on or about the 4th day of January, the plaintiff tendered to defendant a deed, but not executed, embracing the following description: 'All that certain piece, parcel or tract of land situated in County and State aforesaid. Beginning at an iron in center of the Rock Hill road, running thence N. 23¼° W. 896 feet to a pine pointer, thence N. 1 1-34° W. 584 feet to stake on Hughes' line; thence N. 88° W. 465 feet to old stump in ditch; thence S. 13° W. 477 feet to stone, Hughes' corner; thence N. 87°° W. 1,379 feet to a birch on east bank of Fishing creek thence with center of Fishing creek about 1,000 feet to J. E. Lowry's corner; thence with Lowry's line S. 80° E. 2,945 feet to iron in center of Rock Hill road; thence with the center of road N. 50¼° W. 96 feet to the beginning corner, containing fifty and one-half acres (50½) more or less, according to a survey made by John L. Stacey, surveyor."

"The defendant refused to accept said deed, as it did not convey the premises so contracted to be purchased and sold; and demanded of plaintiff the refund of the sum of $404.83, which had been paid by defendant to plaintiff, on the purchase price of the land contracted for, which was

refused by plaintiff. That thereafter the defendant made repeated requests of the plaintiff and J. C. Wilborn, broker, for the refund of the said $404.83, so paid by him on the purchase price of said land, under the terms of said contract, but which they have wholly failed and refused to refund, and for the recovery of which the defendant has instituted suit in this Court, against said plaintiff and J. C. Wilborn, broker, for the refund of said sum."

At the close of the testimony in behalf of the plaintiff, the defendant's attorneys made a motion for a directed verdict, in favor of the defendant, which was granted, and the plaintiff appealed upon the following exceptions:

"(1) For error in charging that where one makes a contract for the sale of land calling for a different line as a boundary line, he cannot tender a different line, even though it is slightly different and involves a shortage of only a few acres, of which he offers to abate the price; the error being that the true rule is that if defendant was tendered a deed to the lands contracted to be sold and purchased, he will be compelled to accept same, even though the description in the deed as to courses and distances may vary slightly from the description in the contract.

"(2) For error in charging that where one makes a contract for the sale of land calling for a different line as a boundary line, he cannot tender a different line, even though it is slightly different and involves a shortage of only a few acres, which he offers to abate the price of; the error being that the presiding Judge failed to give any force and effect to all parts of the contract, especially in reference to the description of the land in controversy described on the plat as not only having a certain course and distance, but as being bounded by the lands of J. E. Lowry.

"(3) For error in holding, at least inferentially, that in determining what land was to be sold and purchased by the contract, more force and effect must be given to the description of the property by courses and distances than

by designation of the lands, of the adjacent land owners; whereas, he should have held that a description of adjoining landowners as a boundary would control over the description of the boundary line by courses and distances.

"(4) For error in holding that the tender made by plaintiff of a deed calling for a different line from that set forth in the contract was not a good tender; the error being that the undisputed testimony shows that defendant was tendered a deed to the premises bargained for and contracted to be purchased, although the description in the deed varied slightly from the description on the plat part of the contract.

"(5) For error in holding that plaintiff is not entitled to specific performance, because plaintiff's tender was not sufficient, in that he did not tender a deed to the land defendant contracted to buy; the error being that the undisputed testimony shows that the plaintiff tendered to defendant a deed to the lands described in and covered by the contract. Exhibit A.

"(6) For error in directing a verdict for the defendant, when the undisputed evidence shows that plaintiff had complied with his contract *in toto,* had tendered a deed covering all of the lands embraced within the contract, and had made an abatement in price for the deficiency (2.42 acres) in the number of acres, although the lands bargained to be sold and purchased were described as containing 52.92 acres, more or less.

"(7) For error in not submitting the case to the jury for the determination of the question of fact as to whether or not the deed tendered by the plaintiff to defendant was a deed conveying to defendant the lands and premises contracted to be purchased by the defendant, as shown by Exhibit A.

"(8) For error in directing a verdict for the defendant, when the undisputed and overwhelming testimony shows that the plaintiff had fully complied with his part of the

contract, and was therefore either entitled to the direction of a verdict for the amount asked for, or that the case be submitted to the jury to determine the question of fact as to whether deed tendered covered the lands described in the contract."

## Opinion

It appears from the pleadings that no questionable issues were involved, and that neither the plaintiff nor the defendant sought the aid of the Court, in the exercise of its chancery powers; that the action brought by the plaintiff was for the recovery of judgment against the defendant, for the amount due under the contract, at the time his action was commenced; and that the only relief which the defendant sought was for the recovery of judgment against the plaintiff for the amount of the purchase money which he had paid to the plaintiff.

It will not be necessary to consider the exceptions in detail.

The description of the land, both in the contract and in the deed tendered by the plaintiff, calls for the land of J. E. Lowry as a boundary line. There is testimony to the effect that the boundary line between the lands of J. E. Lowry and those in question was in dispute prior to the said contract. A survey of the lands in accordance with the courses and distances described in the plat mentioned in the contract shows that the lots contained 52.92 acres, while a survey which fixes the boundary line as claimed by J. E. Lowry only contains 50.50 acres—a difference of 2.42 acres.

The plaintiff testified as follows:

"I told Albert Mobley on the 3rd of January to be up here the next day, the day set for the transfer of the papers, to execute a note and mortgage covering the credit portion of the purchase price of the land, but he didn't come. These are the papers that I had prepared for him to exe-

cute in pursuance with that notice.   (Papers offered in evidence marked Exhibits C and D.)

"The contract called for an aggregate purchase price of $4,048.40.  The deed which I tendered declares the consideration to be $3,863.45.  The explanation of the difference is that on resurveying the piece of land, the land surveyed out 50 1-2 acres.  The contract called for 52 1-2 acres at the date of sale.  We only made out the deed for the acres that were there.  The actual difference is two and a fraction acres.  The contract called for 52.92 acres, more or less, and I tendered a deed for 50 1-2.  The price per acre was $76.50 per acre for 2.4 acres, which failed to survey out.

"The resurveying of the two tracts before I tendered deed to Albert Mobley was done by J. L. Stacy.  I had a conversation with Albert Mobley about the time he was to comply, by paying the additional installments, and he gave as one reason why he never complied with his contract was that Mr. Lowry claimed the corner of the land which I made allowance for, and he stated that Mr. Lowry, whose land he was living on, told him that if he bought the place he would have to move off his land. * * * The demand for the survey of the land was made by all parties who bought it, who wanted to know where the lines were, and I had it surveyed.  The parties who bought it were Mr. Hughes, Mr. Wilborn, and Mr. Lowry and Mobley.  They all asked for the survey, and that was the reason why it was surveyed.

"The nature of the land cut off was just the same as the other land adjoining.  The whole tract was all of the same nature.. All farm land.  There was no difference in this land cut off and the other land in the tract that was left.  No house, nor any construction, trees or other houses were cut off, simply 2 acres of farm land.

"Albert Mobley requested me to have the line resurveyed, and told me he wanted to know where the line was. He told me this after he bought it. He told me he wanted to know where the line was, and I could not know without surveying it. He made no objection to its being surveyed; did not open his mouth at all to my knowledge. Those 2 acres are not of any special convenience to the land or any convenience whatsoever that I can see. No timber or anything of the kind on it, except an old hedgerow. I would not say positively whether it had been abandoned or not. It was some time after the survey before I heard anything from Mobley about the land. * * *

"I heard the testimony here with reference to settling that line down there. The line as explained by Mr. Stacy was the final line agreed upon then or the final line run by them, and this was agreed to by Mr. Lowry and myself. We also had a plat made, and were to put it on record that that was the agreed line, and here is the plat made by Mr. Faries for that purpose. That was to go on record as the agreed line. I suggested making a plat of that line, and Mr. Lowry agreed to it out there. (Plat offered in evidence marked Exhibit No. 2.)"

The description of the lots in the contract was notice to the contracting parties that the lands of J. E. Lowry were mentioned as one of the boundaries; and, of the further fact that if there was a conflict between the courses and distances, and the boundary line between the lands sold to the defendant and those of Lowry, such difference. could not be adjusted, except by consent, unless all persons having an interest in the adjustment were given the opportunity to be heard. The testimony tends to show that the boundary line has been adjusted by the plaintiff and Lowry, and that the defendant consented for a resurvey in order to know where the boundary line ran.

Let us suppose that the plaintiff had inserted, in the deed which he tendered, the description of the lots mentioned in the contract, together with the usual covenants of warranty. Would the defendant have had the right to refuse to accept the deed? And, if he had accepted the deed, could he have recovered any sum whatever, for breach of the covenants of warranty? The answer to these questions depends upon the nature of the sale. The following authorities show that the lots were not sold by the acre, but in gross, for the fixed sum of $4,048.38. *Jones v. Bauskett,* 2 Spears, p. 68; *Shuler v. Williams,* 112 S. C., 349, 99 S. E., 819; *Smyth v. Brunson,* 115 S. C., 385; 108 S. E., 99.

In the last-mentioned case, the Court uses this language:

"The rule in such case is that where land is sold in gross no compensation will be granted for a deficiency in the quality conveyed, unless such deficiency is so great as to justify an inference of fraud or mistake equivalent to fraud. This can scarcely be said of a deficiency of 17 inches in a frontage of 612 inches—less than 3 per cent."

Neither of such elements exists in this case. It is true the plaintiff construed the contract as providing for a sale by the acre, but in this he was in error; and the defendant refused to be governed by his interpretation.

The contract contains this provision:

"Should any defect appear in the title, that cannot be corrected, the amount paid shall be promptly paid to buyer."

It will thus be seen that the amount paid by the defendant as purchase money was not to be refunded by the plaintiff, unless there was not only a defect in the title, but that it was such as could not be corrected. We have already shown that, as the sale was in gross, the defendant was not entitled to compensation for a deficiency; much

less has he the right to recover judgment against the plain-tiff for the purchase money which he had paid.

4    There is no practical difference between the description in the contract and the deed which was tendered.

Reversed.

MR. JUSTICES COTHRAN and MARION concur.

MR. JUSTICE FRASER: I dissent. I lay stress on the shortage of about 2 acres. If the appellant had tendered to the respondent a deed to the land he agreed to convey, it may be that, ordinarily, a shortage in the length of a line or the number of acres might make no difference. Ordinarily, a difference in boundaries even may be insufficient to defeat a sale. These are not the questions here. The appellant comes into Court under a rather peculiar contract. Whatever may be said of appellant's contract, it is a lawful contract, and appellant's rights are determined by his contract. By this contract he must succeed or fall. The appellant agreed to sell to the respondent a certain tract of land set forth on a plat, "for the sum of $4,048.38 for sound and unincumbered title for the entire property." The appellant agreed to sell the *entire property*, and does not claim to have done so. The respondent pays 10 per cent. to bind the bargain, and it is specifically agreed in the contract that if unincumbered title cannot be furnished by the 4th of January, 1921, then the appellant shall return the cash money paid. The respondent came into Court and said (and it is undisputed):

"The appellant has not tendered me, incumbered, or unincumbered, title to the entire tract of land, and I demand a return of my money."

Appellant in argument says:

"Wallace was unable to deliver this small triangle for the reason that he and Lowry had agreed on the new line S. 80° E. to settle the dispute between them."

In other words, the seller, being unable to give a sound and unincumbered title to a portion of the land, cuts off the unsound portion and tenders a deed for the balance. The parties have made no such contract. The contract was to heal the diseased foot. The appellant has cut it off. The claim that this was a sale in gross is fatal to the appellant. The land was sold as an entirety. There must be a conveyance of all or none.

For these reasons I dissent.

MR. JUSTICE WATTS concurs.