13913

HALSEY v. MINNESOTA-SOUTH CAROLINA LAND & TIMBER CO.

(177 S. E., 29)

*Messrs. Legare Walker, L. D. Lide* and *G. L. Buist Rivers,* for appellant,

*Messrs. Mitchell & Horlbeck, H. L. Erckmann* and *J. C. Long,* for respondent,

September 28, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

In an opinion relating to this case, 168 S. C., 18, 166 S. E., 626, 627, Mr. Acting Associate Justice Cothran remarked: "It seems difficult for this case to find a landing field." A narrative of its history justifies the quoted statement, and shows that it has sailed still further in its effort to find a resting place.

The case was begun in 1927 in the Court of Common Pleas for Charleston County. On motion of the defendant it was removed to the District Court of the United States for the Eastern District of South Carolina. There a demurrer to the complaint was sustained, and that decision was affirmed by the Circuit Court of Appeals. 28 F. (2d), 720. In January, 1929, the plaintiff brought action in the Court of Common Pleas for Charleston County against Minnesota-South Carolina Land & Timber Company, which we shall call the Timber Company, and R. L. Montague. The case was tried in 1930, and the presiding Judge directed a verdict for the defendants. On appeal this judgment was reversed and the case sent back for rehearing. 162 S. C., 281, 160 S. E., 843. Pending the disposition of this appeal the defendant R. L. Montague died. The Timber Company filed petition for rehearing, which was denied. The Timber Company then filed its petition in the Court of Common Pleas for Charleston County for the removal of the case to the Federal Court for the Eastern District of South Carolina on the ground of diverse citizenship. The petition was granted. On motion of plaintiff the Federal Court remanded the case to the Court of Common Pleas for Charleston County for trial. 54 F. (2d), 933.

Thereupon, in January 1932, the defendant, the Timber Company, moved the Court of Common Pleas for an order to remove the place of trial from Charleston County to Dorchester County. The motion was denied, and on appeal the Supreme Court, in November, 1932, affirmed the order. 168 S. C., 18, 166 S. E., 626. The case finally came to trial before Judge Featherstone and a jury in April, 1933, and resulted in a verdict for the plaintiff. This appeal followed.

There are forty-five exceptions. Some of them relate to matters which, in our opinion, have been disposed of by former decisions in the case. Some of them are duplicates in relation to alleged errors in the admission, or rejection, of testimony, and some of them relate to issues of fact made by the conflicting testimony, which issues are within the special province of the jury, and in the determination of which this Court is prohibited, by the inhibition of the Constitution, from takng part. Appellant's counsel have elected to discuss the appeal under seven heads, and we shall adopt that plan of consideration of the appeal.

The complaint states its grounds of action at length, but we shall condense it as much as possible.

It alleges a contract between plaintiff and the Timber Company, which was reduced to writing and signed December 31, 1923, in which contract plaintiff was buyer and the Timber Company was seller of a large body of timber and timber rights in Orangeburg County, described in the contract. It is alleged that in the negotiations leading up to and in the consummation of the sale and purchase, R. L. Montague was the agent of the Timber Company. That Montague was represented in some of the transactions relating to the sale by C. J. Baker. That Baker, when he was showing the timberland to plaintiff, had a plat of the lands which he exhibited to plaintiff; that during the negotiations and prior to the execution of the contract, the defendants jointly and concurrently represented to plaintiff that the two tracts described in the contract as the Hutto and Wiggins tracts contained 19,215,000 feet of merchantable timber owned by

Minnesota-South Carolina Land & Timber Company under its deeds; that these statements were made positively by defendants, with the intention and for the purpose of inducing the plaintiff to rely upon them in making the purchase represented by said contract; that plaintiff in reliance upon these statements entered into the said contract, by which he agreed to pay the Timber Company the sum of $150,000.00; this price was based on the joint and concurrent representations of the defendants, or on the basis of about $7.28 per thousand feet for the timber covered by the contract. That plaintiff relying on the representations of the defendants, and having confidence in them, purchased the timber and timber rights set forth in the contract and paid therefor the sum of $150,000.00, and received from the Timber Company a deed therefor dated February 4, 1924, delivered February 15, 1924, which deed contained the usual covenants of warranty; that in this transaction R. L. Montague was the agent of the Timber Company, and received from the Timber Company a commission for his services in connection with the sale; that plaintiff went to the expense of locating a mill to cut the timber, and has practically cut the merchantable timber on the Hutto and Wiggins tracts, and after careful measurements and investigation finds that these tracts, at the time of his purchase of them, contained only some 12,652,194 feet of merchantable timber; that the statements and representations made by defendants to plaintiff were false; that they related to matters peculiarly within the knowledge of said defendants, and on information and belief the plaintiff alleges that said representations were known by defendants to be false, and were made by defendants with the intent to deceive plaintiff, and were made recklessly and without regard to the truth thereabout, and the true facts were purposely concealed by defendants from plaintiff; that these false representations were relied on by plaintiff; if he had known the true state of facts he would not have purchased the timber, or paid the price set out in the contract; that there is a gross discrepancy, or shortage, be-

tween the amount of timber covered by the contract of purchase and the amount actually contained in the Hutto and Wiggins tracts of at least 6,861,906 feet of timber at $7.28 per M feet, amounting to $47,770.68, which timber plaintiff paid for and did not receive, and by reason thereof he has sustained loss of the amount named, with interest from the date of the deed, to wit, February 4, 1924. The allegations relating to the cost of locating the equipment for manufacture and the cost of manufacturing the lumber have been stricken from the complaint and need not be repeated. That plaintiff is entitled to punitive damages.

The answer of the Timber Company is: A general denial; admission of the corporate capacity of the Timber Company and of the residence of R. L. Montague in Charleston; denial of Paragraphs II, IV, V, VII, VIII, IX, X, XII, XIII, XIV and XV. Admits allegations of Paragraph 3 of the complaint, except that the agreement is not therein set out in full; it attaches a copy as Exhibit A. Admits so much of Paragraph VI as alleges that plaintiff received a deed for the timber rights set forth in the agreement of December 31, 1923, the deed being dated February 4, 1924, and that the deed contains a covenant of warranty as to it, but alleges that the warranty was only as to the timber and timber rights covered by the deed; admits the payment by plaintiff of the purchase price of $150,000.00; admits that its codefendant R. L. Montague received a commission from it, but alleges that the services rendered consisted solely in bringing the parties to the said sale together; that said R. L. Montague was not the general agent of the Timber Company, was not charged with the sale of its lands or timber, and had no authority from it to make any statements or representations, or statements to, or agreements or contracts with any person whatsoever in regard thereto, or any agreement or contract with plaintiff, if he did so, which defendant denies, in regard to the sale evidenced by the contract of December 31, 1923. It denies that there was any "amount"

of timber represented by it as alleged by Paragraph XI of the complaint; denies all the allegations of that paragraph.

The brief of appellant's counsel contains the following:

## "QUESTIONS INVOLVED

"The exceptions in this case are numerous, and they involve many important questions, which cannot be properly stated very briefly. But to aid the Court as much as we can we have stated the *Questions Involved* in a very curtailed and restricted manner, and shall argue them under such general headings. However, in the argument, in each instance for a clearer understanding of the Exceptions we. shall, after each heading give a more definite statement of the Questions Involved in this case and presented by the Exceptions."

"1. Did the Court err in admitting testimony varying the written contract which shows that the purchase price for all four tracts of timber including the Breeland tracts, was the lump sum of $150,000.00?

"2. Did the Court err in admitting testimony as to alleged statements, oral and written, by Montague and Baker, more than two years after the transaction, there being no evidence that they were then in any respect agents of the Company, even if they were such agents at the time ,of the transaction?

"3. Did the Court err in admitting testimony tending to vary the signed certificate on the plat?

"4. Was there any evidence of fraud?

"5. If there was any testimony tending to show fraud, did the evidence conclusively show waiver on the part of the plaintiff?

"6. Were Baker's representations, if any, binding on defendant, even if he was defendant's agent (which is denied), since he was also plaintiff's agent?

"7. This action, being based on an alleged joint and concurrent tort, and having abated as to Montague, could any

recovery be had? And besides was there any evidence of joint and concurrent tort?

"8. Did the Court err in his charge as to the measure of damages?"

Appellant's counsel in their brief treat each of these questions in connection with the exceptions to which each relates. We shall do likewise, and take them in the order in which they are stated.

1. Did the Court err in admitting testimony varying the written contract, which shows that the purchase price of all four tracts of timber, including the Breeland tracts, was the lump sum of $150,000.00? (Exceptions 1, 2, 3 and 41.)

The testimony complained of was given by plaintiff and his witnesses Scarpa and Jackson, and was to the effect that in the negotiations preceding the purchase of the timber Montague and Baker stated that the price of all the timber lands was $150,000.00; that plaintiff could take the Hutto and Wiggins tracts at $140,000.00, and the Breeland tracts at $10,000.00, or he could leave the Breeland tracts out.

It is argued that this evidence tends to vary the terms of the written contract of sale which states the purchase price at $150,000.00 and names the four tracts without stating the price of each.

We are unable to appreciate this argument. The testimony complained of shows that the aggregate of the prices for the various tracts was $150,000.00, as is set forth in the contract. It would seem entirely proper to show how the sum was arrived at. Suppose a contract, or deed, stated the consideration to be "Ten Dollars and other valuable considerations," it would not be contended that it would be error to admit proof of what constituted "the other valuable considerations."

We think there is no doubt of the correctness of the rule as stated in *Gladden v. Keistler*, 141 S. C., 524, 140 S. E., 161, and *Shelton v. Skyland Stages, Inc.*,

170 S. C., 100, 169 S. E., 718, viz.: "Parol testimony is admissible to show a different consideration from that expressed in a written instrument, when it was intended as a mere recital, since this would not otherwise change the terms of the written agreement, but it is not admissible when the consideration is contractual, as in that event such testimony would alter the force and effect of the writing in other respects."

If it were conceded that the consideration in the present case is contractual, which is not done, and that there is no ambiguity thereabout, nevertheless, the quoted and approved rule is not violated by the testimony complained of. The contract states it to be the sum of $150,-000.00, and so do the witnesses for plaintiff. The showing that two tracts were brought for $140, 000.00 and two at $10,000.00 does not alter the terms of the contract. But the consideration as stated in the deed is by way of recital. As we understand the definition of a contractual consideration it relates to the amount and the manner and means by which, and the time when the consideration is to be paid. When the consideration is stated to be a fixed sum, the receipt of which is acknowledged, it is merely a recital, and, as shown by the cited cases, parol testimony is admissible to explain it, if it does not alter the terms of the written instrument.

"Since 1834, and before, it has been uniformly held that, notwithstanding the circumstances that a deed may recite a consideration, it is competent to prove by parol testimony what the real consideration was. *Curry v. Lyles,* 2 Hill, 404. Bishop states the case thus : 'The consideration, which is not the promise of the parties, with its special terms and limitations, but merely the thing of value whereby they were nerved to make the promise, ought always to be open to inquiry by oral evidence.' Bish. on Contracts, § 65." *Scott v. Wiggins,* 113 S. C., 90, 101 S. E., 113, 114.

In the case at bar the testimony to which objection is made related to what was done and said during the negotia-

tions leading up to the contract. In the case of *Empire Buggy Co. v. Moss,* 154 S. C., 424, 151 S. E., 788, 790, testimony was offered to show that the salesman of the Buggy Company, as an inducement to purchase, had represented to customers that the buggies were of first-class quality; it was objected to as varying the following terms of the written contract: "No agreements, conditions or stipulations, verbal or otherwise, than those herein mentioned, will be recognized by Empire Buggy Company, and the same is recognized by the purchaser."

This Court adopted the decree of the Circuit Judge, who said: "I think the Master was correct in admitting the testimony. It does not vary the terms of the written contract by introducing a new element into it, it merely shows the inducement which led to the making of the contract."

The case of *Gill v. Ruggles,* 97 S. C., 278, 81 S. E., 519, is an example of a case in which the consideration was contractual and not a recital. Reference to the text of the case shows how it is differentiated from our case.

"The testimony does not contradict or vary the terms of the deed, but was explanatory of the purposes for which the land designated on the map as the 'Circle' was intended, and tended to show the defendant's construction of the contract. *Williamson v. Association,* 54 S. C., 582, 32 S. E., 765, 71 Am. St. Rep., 822. The testimony was likewise admissible for the purpose of showing the negotiations leading up to the execution of the deed. *Bruce v. Moon,* 57 S. C., 60, 35 S. E., 415. It was also competent as tending to show the actual consideration for the deed. [Citing a number of cases from our courts.]" *Marshall v. Ry. Co.,* 73 S. C., 241, 53 S. E., 417, 421.

In connection with this question (1), appellant's counsel consider Exception 41, which alleges error in overruling the motion for new trial made on the ground that the *general* verdict of the jury was contrary to the finding on the *special issues* "in that such findings do

not tend to show any shortage of timber if all four tracts are considered."

It is patent that the jury did not take into consideration the timber on the Breeland tracts. The first issue submitted to them, and to which they answered "yes," restricted them to the answer to the question: Did the defendants make the representations contained in the complaint as to the number of feet of timber on the Wiggins and Hutto tracts?

The Exceptions 1, 2, 3, and 41, upon which Question 1 is predicated, are overruled.

### QUESTION 2

Did the Court err in admitting testmony as to the alleged statements of Montague and Baker more than two years after the transaction, there being no evidence that they were then in any respect agents of the defendants, even if they were such agents at the time of the transaction? (Exceptions 4, 5, 6, 7, 8, 9, 10, 11 and 14.)

Embraced in the argument of appellant's counsel under Question 2 are five subquestions, viz.: Was it error to admit the statements of Montague and Baker made two years after the transaction to which such statements related; was there error in admitting the testimony of the plaintiff and Scarpa and Jackson with respect to the statements alleged to have been made by Montague more than two years after the transaction; was it error to admit over objection certain testimony given by R. L. Montague at the first trial of the case, he having died before the second trial and his testimony having been read at the new trial subject to objection; was there error in admitting a certain letter written by W. H. Cook to R. L. Montague dated March 20, 1924; was it error to admit certain testimony of the plaintiff relating to the issue that Mr. Montague was the agent of the defendant?

The first two subquestions may be considered together. They relate to statements alleged to have been made by Mon-

tague and Baker to the plaintiff and Scarpa and Jackson two years after the contract of sale and purchase, and to a letter written by C. J. Baker to Montague about the same time.

The statements now objected to were made, and the letter of Baker was written, immediately after the alleged discovery of the alleged shortage in acreage and timber.

The testimony of Baker and the letter he wrote Montague were objected to on the ground that they were not admissible unless his agency had been proved, and on the further ground that even if Baker were in the employ of Montague, he could not bind the defendant—the Timber Company. The Court admitted the testimony. Appellant's counsel said: "There are certain phases of this case that cannot come up till later. I think your Honor's ruling is correct as the Court is now advised, but if Mr. Baker was interested in the transaction and got a payment from Mr. Halsey for the part of the work that he did in the transaction."

So far the only objection to the testimony relating to statements and letter by Mr. Baker were on the ground that he had not been shown to be the agent of Mr. Montague, nor had it been proven that he had authority to bind the Timber Company, and that he had received a payment from plaintiff. The objection to the statements attributed to Baker was made on the ground that they were made two years after the transaction. The plaintiff was at that time asked what he did when Baker admitted the error he had made. He said, we went to Mr. Montague and explained the whole matter to him; he had Mr. Baker's letter; seemed much disturbed; and under the circumstances he considered that we were entitled to restitution. Counsel for defendant Timber Company objected, saying in substance: "We don't admit the agency of Mr. Montague, but if it were admitted, how could his representations two years after the transaction have any bearing on this action?" The Court said: "There is testimony that he was their agent to make this contract,

but here you are undertaking to show two years after that an admission which you contend binds the Company. I doubt that, I am going to rule it incompetent at this time. Strike it out, Gentlemen, don't consider that at all."

Testimony to a like effect was given by witnesses Scarpa and Jackson, and admitted subject to the court's final ruling. When the testimony for plaintiff was all in, defendant moved for nonsuit, which was refused. When all the testimony was in defendant moved for a directed verdict in its favor, which was also refused. A motion was also made to strike out the testimony relative to the statements made by R. L. Montague relative to the alleged shortage of timber, which motion was overruled. Thus the contested evidence remained in the record, and its competency and relevancy are challenged by the exceptions which we are now considering.

As was said by the circuit Judge, the situation is an odd one. When the action was first brought it was against the Timber Company. After it had run the gauntlet of the federal courts and had come back to the State Court, it was brought against the Timber Company and R. L. Montague, charging them with a joint and concurrent tort. In this shape the case was tried and resulted in a directed verdict for defendants. Pending the determination of the appeal from this judgment, R. L. Montague died. Thereupon it was sought by the Timber Company to change the venue from Charleston County, where Mr. Montague resided up to the date of his death, to Dorchester County, where it had property and an agent. The motion was refused. 168 S. C., 18, 166 S. E., 626. The opinion suggests that if an action were brought in this State against a nonresident which had no property nor agent in this State, and against a resident defendant, who died after the commencement of the action, and the action as to him was abated by his death, if the action could not proceed against the foreign defendant, who had been properly brought within the jurisdiction of the

Court, it could never be tried. We think it is fairly deducible from this ruling, as applied to the present case, that while there can be no judgment against R. L. Montague, nevertheless, since he was charged along with the Timber Company with the commission of a joint and concurrent tort, statements made by him thereabout are competent. We agree with the circuit Judge that this is the common sense of the situation. There is evidence, and the jury has found, that R. L. Montague was the agent of the Timber Company in the sale of the timber to Halsey. What is more natural than that on the discovery of a shortage in the timber, the buyer should go to the person through whom the negotiations of sale were conducted and upon whose representations as to the quantity of timber contained in the Hutto and Wiggins tracts, the sale was consummated, and bring the matter to his attention; that through him it should be brought to the attention of his principal? But it is argued that this occurred two years after the purchase of the timber, and that as Montague was no longer the agent of the Timber Company his statements relative to the alleged shortage were incompetent and could not bind the Timber Company. We are not prepared to admit the truth of the proposition. It seems to us only fair and reasonable to hold that if Montague was the agent of the Timber Company in the sale of the timber, and made representations relative to the properties, and such representations proved to be untrue, he was still the agent of the Timber Company thereabout until the transaction was finally closed. And it cannot be held to be finally closed if events subsequent to the sale and purchase disclose that the agent's representations were untrue, or, as the complaint alleges, were false. There is in evidence a letter from Mr. Cook, the president of the Timber Company, to Mr. Montague relating to other properties of the company, in which Mr. Montague represented the Timber Company. It is admitted that Baker was in the employ of Montague, and as the representative of Montague had shown

the properties to the plaintiff and made an estimate thereof. When confronted with the proof of the shortage of timber, he admitted it, and went with the complainants to Montague to consult about it. May not this be rightfully termed a part of the *res gestae* of the contract of sale? We think this conclusion is within the rule stated in the case of *Snipes v. A. A. Ry. & Electric Corp.*, 151 S. C., 391, 149 S. E., 111, 112. There the majority opinion said: "It cannot be denied, under the case of *Williams v. Telegraph Co.*, 138 S. C., 286, 136 S. E., 218, that where a statement was made by an agent of a corporation while still about the instant business of the corporation, it would be admissible on the theory that such statement was, although not a part of the *res gestae* as to the immediate transaction, a part of the *res gestae* as to the general transaction in its entirety."

In the present case we think the statements objected to were admissible under the above-stated rule, and upon the further ground that there was evidence from which it might be inferred that Montague was still the agent of the Timber Company.

But if this conclusion should be an erroneous one, we do not think this defendant is in a position to claim that it was harmful to it. A cardinal issue in the case is: Were the statements relative to the quantity of the timber false, and made with the knowledge that they were false representations made by Baker and Montague? Now the statements complained of by these exceptions show that Baker admitted the shortage and showed how it had occurred through his mistake; Montague, when the shortage was brought to his attention, expressed surprise, seemed disturbed, and expressed the opinion that restitution should be made. If the jury believed these statements, they could not believe that the representations as to the quantity of the timber were false and were made with fraudulent intent.

The exceptions relating to Question 2 are overruled.

## QUESTION 3

Did the Court err in admitting testimony tending to vary the signed certificate on the plat? (Exceptions 12 and 13.)

The certificate to which allusion is made was attached to the deed conveying the timber, and is in these words: "We agree that this plat is the plat referred to in the deed from Minnesota-South Carolina Land and Timber Company to A. O. Halsey; and in the mortgage from said A. O. Halsey to Minnesota-South Carolina Land and Timber Company, and the line shown on this plat as separating the upland from the lowland is the line agreed on in said deed and mortgage."

This was signed by the Timber Company and Mr. Halsey February 15, 1924. It appears that the deed was signed by the officers of the Timber Company at Duluth February 4, 1924.

The alleged error consists in admitting testimony of the plaintiff to the effect that this survey by Gaillard was only for the purpose of fixing the swamp line, because it contradicts, varies and alters the written certificate on the plat.

We fail to see the force of these exceptions. The certificate is not altered but rather confirmed by the testimony objected to, which is to the effect that Gaillard was employed to run the line between the swamp and the upland. The certificate so states in terms. Whether the map or plat was actually finished and actually attached on the 15th of February was a matter which was open to proof. We find no merit in these exceptions.

## QUESTION 4

Was there any evidence of fraud? (Exceptions 15, 16, 17, 32, 40, 42, 43, and 44.)

It may well be questioned whether the issue raised by these exceptions is not determined against appellant by the decision of this Court in the former appeal. 162 S. C., 218,

160 S. E., 843. In the first trial the presiding Judge directed a verdict for defendants on the ground that there was no evidence of fraud.

The second syllabus of the opinion recites: "In action for false representations respecting amount of timber on tracts, manner of cutting, held, on conflicting evidence, issue for jury."

In the body of the opinion it is said:

"The plaintiff offered evidence to sustain the allegations of his complaint and that the cutting was done in a proper manner; the defendants offered evidence tending to show that the quantity of represented timber was there when sold, but that it had been wasted and carelessly cut. * * *

"We think that the manner in which the timber was cut was an important issue in the case which should have been submitted to the jury, and that it was error on the part of the presiding Judge to direct a verdict for the defendants."

Analyzed, this language can mean only that evidence relating to the manner in which the cutting was done bore directly upon the question whether false representations had been made as to the number of feet of timber in the tract.

There is testimony that Montague in person, and through his representative Baker, stated in direct terms that there were in the Hutto and Wiggins tracts 19,215,000 feet; that he had been on the lands only once prior to the trial. It is held in *Bradley v. Insurance Company*, 162 S. C., 316, 160 S. E., 721, 725: "A false statement as to an existing fact made by one while knowing that he is without knowledge regarding it constitutes fraud." Citing authorities.

It is alleged in the complaint that the plat which Baker had when he sold the properties to Halsey and upon which he made the estimate of 19,215,000 feet in the Hutto and Wiggins tracts was purposely withheld from Halsey, although frequent requests and demands were made for it. That if plaintiff had had this plat he would have discovered much earlier than he did that the number of

feet of timber named in the contract and deed was not there. It appears in evidence that when Baker was informed that there would be a shortage of timber he got this plat and his cruise book of this timber and checked the plat by the cruise book and said that there was a shortage of 611 acres of land and over 5,000,000 feet of timber which should not have been included in the estimate. There is evidence which tends to show that Mr. Cook, the president of the Timber Company, purposely withheld and concealed the Lamb estimate which was lower than Baker's and which he said was in the possession of the company. There was evidence of a large discrepancy in the number of feet of timber, which made a question for the jury whether it was gross enough to constitute fraud. See *Wallace v. Mobley,* 120 S. C., 261, 112 S. E., 264.

■ Fraud may be inferred.

■ "To prove knowledge of the falsity of a representation of the seller quite a wide latitude is permitted in regard to the admission of evidence, as it is a matter which is ordinarily not the subject of direct proof but is to be inferred from the circumstances surrounding the transaction." *Sou. Iron & Equip. Co. v. Ry. Co.,* 151 S. C., 521, 149 S. E., 271, 277. Citing 24 R. C. L., 347.

■ "To constitute actionable fraud, it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, *or made it recklessly, without any knowledge of its truth and as a positive assertion;* (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." (Italics added.) *Halsey v. Minnesota-South Carolina Land & Timber Company* (C. C. A.) 28 F. (2d), 720, 722.

■ The intent with which representations were made was a question for the jury.

"There was evidence in the case as to fraud, deceit, and evil intent on the part of the defendant, where more than one inference could be deduced, and it was the duty of the court to submit the case to the jury." *Gobbel v. Columbia Ry., Gas & Electric Co.*, 107 S. C., 367, 93 S. E., 137, 138.

There was some evidence of fraud which made it the duty of the Court to submit that issue to the jury.

The exceptions relating to the issue stated by Question 4 are overruled.

## QUESTION 5

If there was any testimony tending to prove fraud, did the evidence conclusively show waiver on the part of the plaintiff? (Exceptions 21, 22, 23 and 24.)

These exceptions present a curious inconsistency. They allege that the plat which contained the certificate, herein-before considered, was attached to the deed, or contract, and gave Halsey notice of any discrepancy in *acreage* which should have put him on notice of a discrepancy in *timber*. Yet defendant offered testimony of able and expert witnesses to prove that whilst there was a shortage of acreage there was really more timber than was represented to be on the Hutto and Wiggins tracts.

There is divergent testimony whether the map, or plat, was made for Halsey, or whether it was made for any purpose other than to show the line bordering the lands in order that the cutters might not trespass on the lands of others. Nothing has been offered in evidence to show that facts proved called the attention of the plaintiff to the shortage, or were of such nature as to charge him with knowledge, which amounts to waiver. Any question of waiver was properly left to the jury. There is evidence that plaintiff did not discover the shortage of timber until the fall of 1926, and that it was immediately brought to the attention of the defendant. It was a question for the jury to determine

whether it had been discovered before that time. The fact that the plaintiff paid off the mortgage and cut the timber for two years before making complaint might properly have been argued as evidence of waiver if it had been shown that plaintiff knew of the shortage; but that was for the jury to determine.

The exceptions relating to the issue suggested by Question 5 are overruled.

## QUESTION 6

Were Baker's representations, if any, binding on defendant, even if he was defendant's agent (which is denied), since he was also plaintiff's agent? (Exceptions 25, 26 and 27.)

The gravamen of this question lies in the assumption that it is proved that Baker was the agent of the plaintiff. An examination of the record discloses that there is an issue of fact over the question whether Baker was the agent of plaintiff and there is testimony in support of the allegation of his agency, and testimony against the proposition. It was properly submitted to the jury.

These exceptions are overruled.

## QUESTION 7

This action being based on an alleged joint and concurrent tort, and having abated as to Montague, could any recovery be had; and besides was there any evidence of joint and concurrent fraud? (Exceptions 18, 19, 20, 28, 29, 30, 31, 33 and 45.)

The issues made by this question have been partially considered hereinabove. The question whether the death of Montague wrought an abatement of the case as to him is settled in the affirmative. Did it preclude recovery against the other defendant in an action sounding in damages arising from a joint and concurrent tort of the two?

We think this question is settled by previous decisions of this Court and the Federal District Court in this very case.

The status of the defendants was fixed at the time of the commencement of the action.

The case of *Halsey v. Minn.-So. Car. L.& L. Co.* (D. C.) 54 F. (2d), 933, 935, turned upon a motion to transfer the case from the State to the federal Court on the ground that Montague having died the only remaining defendant was a foreign corporation, therefore there was a matter of diverse citizenship.

In denying the motion and remanding the case to the State Court, Judge Cochran said: "Here the plaintiff began his case in the state court in good faith. * * * He has pressed his case to trial against both defendants in the lower court, and has carried it against both of them by appeal to the Supreme Court. He had no part in changing the status of the case; that has been forced upon him *in invitum* by the death of the party and the law which declares that the case as to that party shall not survive. *He is not to be deprived of his right to continue in the state court because of events over which he had no control whatever."* (Italics added.)

When this decision came down from the federal Court the Timber Company immediately made a motion to transfer the case from Charleston County to Dorchester County, alleging that it had no property or agent in Charleston county but did have an agent and property in Dorchester County. This Court, in an opinion by Mr. Acting Associate Justice Cothran, which ably reviews the decisions in this and other jurisdictions, and the views of writers of textbooks, quoted with approval from 7 R. C. L., 1045, the following: *"After a court once acquires jurisdiction of the person and subject-matter, the death, removal from the county, or resignation from office of one of the defendants will not abate the suit, and the court will have power and authority to proceed to final judgment or decree."* (Italics added.)

The only logical deduction from these opinions of the two Courts is that the death of Montague abated the case as to him but did not preclude recovery against the Timber

Company. If the Courts had thought otherwise, they would not have remanded the case for trial, but would have dismissed it.

This ruling is supported by other decisions of this Court. It is the established law of this jurisdiction that one may sue only one of· joint tort-feasors, or more than one, at his pleasure.

In the case of *Little v. Robt. G. Lassiter & Co.*, 156 S. C., 286, 153 S. E., 128, Mr. Justice Blease in the majority opinion said: "The injured party is not obliged to join both joint tort-feasors in his action, but he may sue either singly. These principles have been well recognized in South Carolina for over a hundred years."

This case is quoted. with approval in the case of *Deas v. Rock Hill P. & F. Co.*, 171 S. C., 58, 171 S. E., 20, 23, and this is said in relation to the opinion of Mr. Justice Blease: "Associate Justices Stabler and Carter concurred in this opinion. Chief Justice Watts concurred in the result. Mr. Justice Cothran dissented on certain grounds, but he concedes the correctness of the statement that a plaintiff in an action in tort may sue one or more joint tort-feasors at his election."

Appellant cites in its. argument cases that are applicable to the doctrine of *respondeat superior;* we do not think that doctrine is applicable in this case. Here the Timber Company and Montague are sued as joint and concurrent tort-feasors. It is incumbent on plaintiff in such case to prove that a joint tort has been committed, and in the present action the presiding Judge. explicitly so held and so charged the jury. In the case of *Rhodes v. So. Ry. Co. et al.*, 139 S. C., 139, 137 S. E., 434, the Railway Company and its engineer were charged with a joint and concurrent tort; the verdict was in these words: "Verdict against Southern Railway only account this steam being beyond Engineer R. C. Carter's control." On appeal this Court said: "Again, in a suit for a joint and concurrent tort,

proof of the commission of the tort by one of the defendants only is sufficient to take the case to the jury, and to justify a verdict against that defendant." Citing numerous authorities in the decisions of our Court.

The case of *Pendleton v. Columbia Ry., G. & E. Co. et al.*, 133 S. C., 326, 131 S. E., 265, 268, was one to recover damages for personal injuries alleged to have been caused by the joint and concurrent tort of the railway company and one Dicks, the driver of an automobile. Mr. Justice Marion delivered the opinion of the Court, and said, *inter alia*: "No separate cause of action is formally alleged against either of the defendants, and the whole amount of the damages alleged to have been sustained is sought to be recovered against both. *We think a recovery against one defendant in this action would clearly preclude the plaintiff from thereafter attempting to pursue and hold the other upon the theory,*" etc. (Italics added.)

Here is distinct recognition of the principle that one may recover against one only of two or more joint tort-feasors sued in the same action.

"A complaint which states a joint liability of defendant is not affected by the fact that action is dismissed as to the other joint tort-feasors." 62 C. J., 1152.

The case of *National Bank v. So. Ry.—Carolina Division*, 107 S. C., 28, 91 S. E., 972, 973, charged a joint tort committed by the railway company and the oil mill. In the opinion of Mr. Justice Watts, this is said: "The plaintiff could have a judgment against either of the defendants or both as they were joint tort-feasors, but it could have but one satisfaction for the wrong done."

It is plain that the exceptions upon which this question is based cannot be sustained.

## QUESTION 8

Did the Court err in his charge as to the measure of damages? (Exceptions 34, 35, 36, 37, 38 and 39.)

This last issue takes on a curious complexion. It is alleged as error that the Court charged that the measure of damages would be the shortage in feet computed at $7.28 per thousand feet, because it was a charge on the facts, and there is no evidence in support of that figure as the value of the timber.

It is alleged in the complaint that that is the approximate value per thousand feet of 19,215,000 feet of timber which plaintiff claims he was assured was on the Hutto and Wiggins tracts. The answer denies this allegation, thus putting it in issue. On the trial when plaintiff sought to prove the value of the several sorts of timber on the purchased property, he was met with objection on the part of defendant on the ground that "the agreement says one hundred and fifty thousand dollars for the timber on the four tracts, it does not say long, short or any kind of timber. * * * *The complaint alleges* that the timber was to be purchased for one hundred and fifty thousand dollars on the basis of about seven dollars and twenty-eight cents a thousand feet"; that the testimony would tend to vary the written agreement. The objection was sustained. Although the answer denied this allegation of the complaint, the defendant offered no testimony to show the value of the timber. Later the plaintiff testified, without objection, that the value of long leaf pine was $10.00 a thousand feet and that of short leaf pine $6.00 per thousand feet. There was then introduced in evidence the timber book of Mr. Baker which showed that on the Wiggins and Hutto tracts there were 4,495,000 feet of "round" long leaf pine, there were 1,120,000 feet of boxed turpentine long leaf yellow pine timber, 815,000 feet of short leaf yellow pine, 485,000 feet of cypress and hardwood; on the Breeland tract 1,168,000 feet of short leaf timber, 170,-000 feet of cypress, 510,000 feet of hardwood—making a

total on the Breeland tract of 2,400,000 feet, and on the Wiggins and Hutto tracts of 19,215,000.

It would seem that defendant is not in position to object that there is no evidence that the average price of the timber was $7.28 per thousand feet. By its objection it prevented plaintiff from proving the value of each sort of timber from which the average price could have been ascertained, and it offered no such testimony itself. But there is testimony, as shown above, from which the jury could adduce the average price. There is testimony that the price of long leaf pine was $10.00 the thousand, and of short leaf pine $6.00 the thousand. The average price would be $8.00 the thousand. Allowing some reduction for the small quantity of other sorts of timber would make the price of $7.28 used by the jury about right.

If, in his charge as complained of, his Honor misstated the issue, it was the duty of counsel to call his attention to the fact. The complaint stated the price of the timber to be *about* $7.28 per thousand. If the Court stated it as a fixed sum, it was the duty of counsel to call to his attention the fact that the answer denied this allegation of the complaint. It seems hardly necessary to cite authorities in support of this proposition.

"If his Honor, the presiding Judge, stated the issues * * * erroneously, it was the duty of counsel to call his attention to such error." *Steele v. Boyd,* 121 S. C., 141, 113 S. E., 477, 478.

Assuming that the charge was, in the respect claimed, erroneous, did it result in any injury to defendant?

Mr. Montague testified that the price of timber is determined by the number of feet. The defendant contends that the charge prevented the jury from considering the quantity and value of the timber on the Breeland tracts. Throughout the trial the defendant had contended that the timber on all the tracts had been bought at the lump sum of $150,000.00. Counsel assume that in fixing the amount of

plaintiff's damages at $27,300.00, with interest from February 15, 1924, the jury did not include in their calculation the timber on the Breeland tracts. This is an assumption; but if it be a well-founded assumption, how was defendant damaged? The verdict, with interest added, amounts to $44,-879.90. Halsey did not cut the timber on the Breeland tracts. He sold it for $14,000.00. If you subtract this from the lump sum of $150,000.00, the Hutto and Wiggins tracts will stand plaintiff at a cost of $136,000.00. The jury found that the quantity of the timber represented to be on the Hutto and Wiggins tracts was 19,215,000 feet. Divide $136,000.00 by this sum, and we have $7.07 as the cost per thousand feet to Halsey. The shortage fixed by the jury was 3,750,000 feet—considerably less than the plaintiff claimed—and the sum obtained is $26,512.50. To this sum add the interest which makes the total exceed $43,500.00. Thus it is seen that the difference between the verdict and the amount it would have been if the jury had considered the timber on the Breeland tracts is less than $2,000.00. Judge Featherstone ordered a new trial unless the plaintiff remitted on the record the sum of $7,500.00, which was done. The calculation shows that if it should be conceded that the Court was in error when it fixed the measure of damages at the amount of the shortage multiplied by $7.28, it is plain that the defendant has suffered no injury or loss therefrom.

For these reasons the exceptions relating to this question must be overruled.

This case has been conducted with conspicuous skill and ability. Appellant's counsel have presented a powerful argument on the facts of the case, with strong evidence to support it. There is, however, competent testimony in contradiction, and this situation, because of the inhibition of the Constitution, precludes this Court from interfering with the finding of facts by the jury.

All the exceptions are overruled, and the judgment of the Circuit Court is affirmed.

Mr. Chief Justice Blease, Messrs. Justices Stabler and Carter and Mr. Acting Associate Justice W. C. Cothran concur.